# F. J. TESTA v. J. P. KAHAHAWAI, WM. WHITE, D. L. KEKU, D. K. KALAUOKALANI AND D. KALAU-OKALANI.

### EXCEPTIONS FROM CIRCUIT COURT, FIRST CIRCUIT.

ARGUED JANUARY 8, 1907.     DECIDED JANUARY 21, 1907.

### FREAR, C.J., HARTWELL AND WILDER, JJ.

ORAL CONTRACT NOT MERGED IN WRITTEN, WHEN.

An action may be maintained on a completed joint oral contract, notwithstanding that its terms were reduced to writing, if the latter remains ineffective through the failure of one of the joint promisors to sign it.

"TRUSTEES," IN CONTRACT—*merely ·descriptive.*

The word "trustees" following the names of certain parties in a contract is merely descriptive and does not relieve them of personal liability.

INDEBITATUS ASSUMPSIT—*in case of express contract.*

Indebitatus assumpsit, as for goods sold and delivered or work done, may be maintained, notwithstanding proof of an express contract, when the plaintiff has performed his part and the defendants have merely to pay the agreed price or when the contract has been partly performed by the plaintiff and then terminated through the fault of the defendants or by mutual consent, in which case the express contract may be introduced in evidence to show the amount due.

### OPINION OF THE COURT BY FREAR, C.J.

This action, which is for the balance due for materials furnished and services rendered in printing a newspaper, was first tried in 1899 when the plaintiff recovered a verdict which was set aside by this court in a decision reported in 12 Haw. 254,

which see for a fuller statement of the case. Apparently no further steps were taken until last year, when, upon a trial before the circuit court, jury waived, the plaintiff obtained a judgment for the full amount claimed, $743.40, interest and costs, against all the defendants except D. Kalauokalani, as to whom the action had been dismissed early in the trial upon its appearing by the plaintiff's own testimony that he was not a party to the contract. The defendants in this court rely upon three exceptions.

1. When the plaintiff as a witness had nearly finished stating the terms of the oral contract which he relied on, but which he had also stated had been reduced to writing but had not been signed by all the defendants, objection was made to the further statement of the terms of the oral contract on the ground that the written contract was the best evidence. The objection was overruled and an exception taken. It is conceded that if the oral contract contained the same terms as the written, it might be relied upon to hold the party who had failed to sign the written contract, but it is contended that the written contract contained additional matter. The object is to show that the defendant White, who did not sign the written contract, is not liable.

The plaintiff had already stated the material portions of the contract; no motion was made to strike this out; he did not proceed to state the remaining portions even after the objection was overruled; the defendants themselves introduced the written contract a little later. At the time of the objection it did not appear that there was any variance between the oral and written contracts; on the contrary, the inference from the statement that the oral contract was reduced to writing would be that they were the same; and such appears to have been the fact. Two points of variance are claimed. One is that the written contract contained a clause by which the defendants assumed all responsibility and agreed to hold the plaintiff harmless and indemnified for all losses, etc. There is no evidence tending to show that this was not included in the oral contract. On the contrary the plaintiff testified later that the two contracts were identical in

their terms, and that the defendant White, who did not sign the written contract, gave the instructions as to what it should contain. Neither that defendant nor the three defendants who did sign objected to the presence of that clause. The other point of variance claimed is that the written contract contained the word "trustees" after the names of the defendants as parties of the second part while the oral contract was with the defendants personally. There is evidence tending to show that in orally contracting the defendants represented that they were trustees, but, even if there were not, the word "trustees" in the written contract is merely descriptive and surplusage and does not relieve them of personal liability. They did not purport to contract as trustees, much less did they attempt to limit their liability to the amount of trust funds, if any, nor did those who signed do so as trustees, nor does it appear from the agreement for what they were trustees. We do not mean to imply that if these were points of variance the result would not be the same under the circumstances of this case.

2. When the plaintiff rested, the defendants moved for a dismissal of the case, apparently on the ground that plaintiff's counsel had stated that he relied on a contract, while one of his witnesses, the foreman of his printing office, had testified substantially that he did not know of any contract. The motion was denied and an exception taken.

The plaintiff himself testified to the contract and the foreman was relied on not to prove the contract but merely to show certain preliminary matters leading up to it and what was done under it after it was made. The motion was properly denied.

Certain arguments are made in connection with this exception, which, though they do not seem to be raised by the exception, will nevertheless be considered. One of these is that, if the oral contract is relied on, D. K. Kalanokalani cannot be held because, although he signed the written contract, the evidence shows, as contended, that he was not a party to the oral contract. It is true there was much evidence pointing that way but there was also evidence pointing the other way and therefore the find-

ing of the trial court, regarded as having the force of a verdict,. cannot be disturbed. There was direct testimony by the plaintiff to the effect that the defendant in question entered into the oral contract. The plaintiff's foreman also testified that this defendant was present at a portion of the preliminary negotiations. The fact that he signed the written contract without objection or hesitation and that it had already been prepared with his name in it as one of the parties corroborates the testimony of the plaintiff.

Another contention is that after the publication had continued. several months the plaintiff suspended publication in consequence of the defendants' failure to pay according to the terms of the contract and then resumed at the urgent request of D. Kalauokalani and upon his undertaking to be responsible, and that, therefore, the original contract was terminated, the defendants released and virtually a new contract entered into with D. Kalauokalani alone, who was not a party to the original contract. As matter of fact, there was merely a delay for a day or two in printing one issue of the paper and no suspension of publication or termination of the old contract. The original parties continued to receive the papers and make payments on account, and evidently it did not occur to them that the contract had been terminated. D. Kalauokalani might well have been regarded by the trial court as merely entreating for time on behalf of the others or, at most, as having entered only into a contract of guaranty. Even if the original contract was terminated at that time, the action might still be maintained for a part of the amount claimed and could not properly have been dismissed.

3. The contract was to be in force for six months with the privilege of six months more if mutually agreed. Immediately after the exception that has just been considered had been taken and allowed and the court had held that the defendant White, who had not signed the written contract was bound by the oral contract, the court volunteered the statement that, although there was a mutual understanding upon the expiration of the

first period of six months for a continuation for another period
of six months, the plaintiff had abandoned the contract and
ceased publishing the paper at the expiration of two months of
the second period, and that, therefore, he could not recover ex-
cept upon a quantum meruit and could not recover upon that
because there was no count for that in the complaint, where-
upon the defendants submitted that the action should be dis-
missed. The plaintiff, however, stated that he claimed for ma-
terials furnished and services rendered on the oral contract and
that the defendants had accepted the goods upon that contract.
The defendants still insisted that there was a variance. There-
upon the court held that there was sufficient in the case to state
a cause of action on a quantum meruit and denied the motion to
dismiss. No exception was taken. The defendants then sub-
mitted that, "having disposed of the question of contracts * * *
all of the testimony going to anything after the last part of
October, the 28th of October, be stricken out." This motion was
denied and an exception taken.

We do not see upon what ground this motion could properly
have been granted, whether the action was upon an express or an
implied contract, upon a special contract or a quantum meruit.
It apparently was based upon the erroneous theory that the con-
tract with the defendants terminated before the expiration of
the first period of six months when the plaintiff delayed printing
the paper for a day or two.

The argument seems to be, first, that the court erred in holding
that the complaint could be construed as a count upon a quantum
meruit because there was no allegation of the reasonable value
of the work, and, secondly, that even if the complaint could
properly be so construed there could be no recovery because of
a variance between the pleading and the proof—the pleading
showing a count on a quantum meruit and the proof showing an
express oral contract. This point will be considered although it
does not seem to be involved in the exception.

It is not altogether clear whether the complaint, which is for
"merchandise sold, furnished and delivered * * * and for services

rendered," was intended to be upon an express or an implied promise as to the price to be paid for the work. Apparently it was intended as a complaint in indebitatus assumpsit for goods sold and delivered and work performed, in which case it can be sustained as founded upon an express oral contract. When an express contract of this character has been fully performed by the plaintiff or when its termination has been occasioned by the defendants or has come about by mutual consent, an action of indebitatus assumpsit may be brought and the special contract may be introduced to show the price to be paid or amount to be recovered. It is merely a question of the mode of proof, not of variance between the allegations and proof. 9 Cyc. 685. In the present case the plaintiff fully performed his contract for the first period of six months and for a portion of the second period, when he ceased because of the failure of the defendants to perform their part of the contract in making payments. The plaintiff, therefore, is entitled to recover. The finding of the trial court that the four defendants against whom judgment was rendered were liable upon the oral contract is sufficient to sustain the judgment under the complaint in indebitatus assumpsit. The fact that it finally regarded the complaint as a count upon a quantum meruit when it probably meant or should have meant a count for goods sold and delivered and services rendered, is immaterial.

The exceptions are overruled.

*W. C. Achi* for plaintiff.

*W. T. Rawlins* for defendants.