ROGER J. MILLER, DOROTHY L. MILLER and HELEN M. MILLER, a Minor, by her father and next friend, ROGER J. MILLER, Plaintiffs-Appellants, *v.* JACK Y. YOSHIMOTO, MITSUYE A. YOSHIMOTO, and RICHARD YOSHIMOTO, a Minor, Defendants, and THE STATE OF HAWAII, Defendant-Appellee

NO. 5546

JUNE 3, 1975

RICHARDSON, C.J., KOBAYASHI, OGATA AND MENOR, JJ., AND CIRCUIT JUDGE KATO ASSIGNED BY REASON OF VACANCY

OPINION OF THE COURT BY KOBAYASHI, J.

This appeal by plaintiff (appellant) is against the State of Hawaii (appellee) only.

The appellant instituted this negligence action for damages for the total loss of her left eye caused by the willful action of defendant Richard Yoshimoto, a minor (defendant). Appellant brought this action against both Yoshimoto and the appellee and alleged, *inter alia,* that appellee failed to provide proper supervision of students in or around the school area in which appellant was injured. The trial court[1] gave judgment to the appellee. We affirm.

The issues on appeal primarily involve the following:

1. Finding of fact of the trial court, to-wit:

There was no act or omission by the [appellee] or any of its employees that was the proximate cause of the injury to [appellant] and the [appellee] was in no way negligent in the premises.

2. Conclusions of law of the trial court, to-wit:

a. The action taken by the principal in assigning after-school supervisory duties to school personnel was sufficient and adequate under the circumstances.

b. Under the circumstances of this case, the [appellee] had no legal duty to provide supervision of students in or around the area in which the [appellant] was injured.

c. The absence of any supervisory personnel in the area in which [appellant] was injured was not the proximate cause of her injury.

---

[1] State Tort Liability Act, HRS § 662-5, reads:

§ 662-5 *Jury.* Any action against the State under this chapter shall be tried by the court without a jury.

FACTS

Aliamanu Intermediate School, hereinafter A.I.S., is a public school operated by the appellee. It is comprised of approximately 1600 students in the seventh and eighth grades.

Of the 1600 students approximately 80 percent use the buses to return home, while the other 20 percent walk home. Between 60 to 90 students walk home in the school campus area where the appellant was injured.

The principal of A.I.S., Mr. Harry Ono, had assigned various school personnel supervisory duties between 2:10 p.m. and 2:35 p.m.

On November 2, 1971, at about 2:10 p.m., Helen M. Miller, appellant, and her fellow students were dismissed from their classes at A.I.S. Accompanied by her friend, neighbor and classmate, Susan Colburn, appellant started walking home from her classroom in "B" Building at about 2:15 p.m. In order to reach home the girls had to walk[2] between "F" Building and "B" Building and then across the school yard toward a flight of stairs which leads to Salt Lake Boulevard.

As appellant and Susan proceeded between "B" Building and "F" Building, Susan heard and appellant saw rocks[3] being thrown from the end of "F" Building toward the area near "B" Building.

They recognized the two boys who were throwing the rocks as fellow students at A.I.S.

Appellant saw the boys throw three or four rocks; Susan saw the boys throw two or three rocks.

The girls then continued past the end of "F" Building and appellant asked the boys to stop throwing rocks as the rocks were going across the route where the girls would be walking. One of the boys then started to tease appellant.

---

[2] See drawing on next page.

[3] Local vernacular referring to small stones.

336

FOOTNOTE 2 DRAWING

As the girls continued walking the boys threw three or four rocks at the girls. Appellant again told the boys to stop throwing rocks, but the boys continued to throw rocks. These rocks came close enough to cause the girls to dodge them.

Appellant then told one of the boys that they "better not throw any more rocks" at her. Two more rocks were thrown at Susan and then appellant was struck in the eye by a rock.

Including the rock that injured appellant's eye, a total of between eight and twelve rocks were thrown by the boys at appellant and Susan.

The injury to appellant's eye required an enucleation of the left eye, an operation whereby the entire eye is removed from the socket. An artificial eye was later inserted.

### STATUTE

HRS § 296-12 empowers the Board of Education to adopt rules and regulations for the governance of all teachers, educational officers, other personnel, and pupils, and for carrying out the general scheme of education. Pursuant to this power the Official Policies and Regulations of the Department of Education, State of Hawaii 1970 (adopted 10/1970), provide in part the following:

*Policies and Regulations, Department of Education, State of Hawaii*

At Page 1700-2:

### DUTIES AND RESPONSIBILITIES OF PRINCIPALS

### POLICY

The principal shall be the chief administrative officer of his school. He shall be responsible for the planning, organizing, staffing, directing and controlling of the educational programs, finances, personnel and facilities of his school, and he shall perform all other duties assigned by the district superintendent.

338

At Page 1900-1.1:

### DUTIES AND RESPONSIBILITIES
### OF TEACHERS

#### REGULATIONS

The teacher shall:

. . . .

2. Observe the hours of work established for the school to which he is assigned and be subject to call by the principal, either before or after school, and at such times as his services may be required at special school functions.

. . . .

7. *Assist the supervision of pupils* before school, during intermission and *after school*.

. . . .

10. Be familiar with and observe department policies, rules and regulations.

. . . .

At Page 4210:

#### STUDENT SAFETY POLICY

*Attention of the Department of Education shall be given to the personal safety of each student while on campus or* engaged in school-connected activities off-campus. Such attention shall include instruction in safety habits and attitudes; proper maintenance of buildings, grounds, and equipment; establishment and enforcement of proper rules of conduct at each school; and provision of services *to safeguard students from the deviant behavior of those who fail to conform to standards of conduct compatible with the best interests of all.*

At Page 4210.1:

## STUDENT SAFETY
### REGULATIONS

1. Instruction in safety habits and attitudes shall be assumed by all school staff members.

2. The principal shall inspect or cause to be inspected all buildings, grounds, and equipment to which students have access, recommending proper measures for the maintenance of adequate safety.

3. Involving the students, teachers, and parents to the extent which they may contribute their ideas and support the principal shall establish necessary rules of conduct to govern behavior and safety on the campus and at school-related activities off-campus.

4. *The principal shall deploy his staff members in such a manner that their supervisory responsibilities shall include the personal safety of all students.*

5. The principal shall seek additional resources, outside his immediate staff, to prevent physical harm to the students under his supervision.

6. District Superintendents shall take into consideration the behavioral characteristics and special needs of students in their allocations of personnel to schools.

At Page 4230:

### JUNIOR POLICE OFFICER PROGRAM

#### REGULATIONS

1. *School's concern. The public schools have a concern for the safety and welfare of their students in the immediate vicinity of the school as they come and go before and after the regular school day.*

. . .

8. *Hours of duty.* Junior Police Officers, under the supervision of a member of the school staff, shall be on duty at least 30 minutes prior to the opening of school and for a period of 15 minutes after students are dismissed.

Exceptions to this schedule may be made with the approval of the principal and the director of the Junior Police Organization.

(Emphasis added.)

It is widely recognized that the public school systems have a duty of reasonable supervision of the students entrusted to them. *Titus v. Lindberg*, 49 N.J. 66, 73, 228 A.2d 65, 68 (1967). *See also* Annot., "Tort Liability of Public Schools and Institutions of Higher Learning for Injuries Resulting from Lack or Insufficiency of Supervision", 38 A.L.R.3d 830 (1971).

We agree with the above view and conclude that the appellee has a duty of reasonably supervising the public school students of Hawaii during their required attendance and presence at school and while the students are leaving school immediately after the school day is over. And, in our opinion, the duty of reasonable supervision entails general supervision of the students, unless specific needs, or a dangerous or a likely to be dangerous situation calls for specific supervision.

We are of the opinion that the rules and regulations of the Board of Education of the State provides the necessary guidelines and requirements for the personnel of the State educational system to perform its supervisory duties.

The critical question is whether the record herein shows that the appellee fulfilled its duty of reasonable supervision under the circumstances of this case.

The trial court's findings of fact, *inter alia,* are as follows:

The principal of the school, on November 2, 1971, had assigned various school personnel after-school supervisory duties between 2:10 p.m. and 2:35 p.m., as follows:

a. Three adults were assigned to supervise students in areas in which buses were being loaded.

b. One adult was assigned to supervise a cross-walk across Salt Lake Boulevard immediately in front of the school.

c. One adult, the vice-principal, was assigned to roam the campus and insure students had left or were leaving the school grounds.

d. The principal stationed himself on an elevated walkway near the administrative building whereby he could view certain areas of the school campus.

e. The school teachers had been instructed to supervise student conduct in hallways immediately adjacent to their classrooms.

f. There was no personnel assigned specifically to supervise the area in which [appellant] was injured.

g. There was no act or omission by the [appellee] or any of its employees that was the proximate cause of the injury to [appellant], and the [appellee] was in no way negligent in the premises.

Would the fact that there was no personnel assigned specifically to supervise the area in which appellant was injured be sufficient to show that appellee has breached its duty to provide reasonable supervision? We are of the opinion that, that in itself is not sufficient to show a breach by the appellee of its duty of reasonable supervision.

The duty of reasonable supervision does not require the appellee to provide personnel to supervise every portion of the school buildings and campus area. However, if certain specific areas are known to the appellee as dangerous, or the appellee should have known that a specific area is dangerous, or the appellee knew or should have known that certain students would or may conduct themselves in a manner dangerous to the welfare of others, duty of reasonable supervision would require specific supervision of those situations.

The appellant, however, failed to adduce any evidence showing that the area in which appellant was injured was dangerous in character or likely to be dangerous because of known deviant conduct of students or of others, requiring specific supervision by the appellee.

A careful review of the record shows, however, the following facts which have probative value on the question of whether the appellee failed to perform its duty, to-wit:

1. The principal testified that the school campus is small.

2. Defendant Yoshimoto and another boy threw several rocks at the area in question before the arrival of the appellant and her friend.

3. When appellant and her friend arrived at the scene, defendant Yoshimoto and the other boy threw rock after rock at appellant and her friend until a rock thrown by defendant Yoshimoto hit appellant on the left eye.

4. The principal, vice-principal, and the faculty members all failed to see the sustained deviant behavior of the defendant and the other boy.

5. After the appellant was injured, she was taken part of the way home by her friend Susan, and then was accompanied home by Paula, Susan's sister, and another girl.

6. None of the faculty members (including the principal and vice-principal) knew of appellant's injury until appellant's father, an attorney, a police officer, and a girl (not identified), visited the school that afternoon at about 5:00 p.m.

Though the above evidence have probative value supporting appellant's complaint filed against the appellee, we are of the opinion that the evidence, in itself, is not sufficient to prove that the appellee failed to perform its duty herein.

The appellant had the burden of proof in sustaining the elements of her charges against the appellee. In light of the above evidence and the burden of proof, we are puzzled and disturbed by the failure of counsel of appellant to call as a witness the vice-principal of A.I.S. and to ask certain relevant questions. Perhaps, a justification exists in not calling the vice-principal as a witness, but the record does not reflect it. However, the record does show that the vice-principal was the only person assigned to supervise the general campus area.

The rule[4] is clear that the findings of fact by a judge, sitting without a jury, "shall not be set aside unless clearly erroneous". *Low v. Honolulu Rapid Transit Co., Ltd.,* 50 Haw. 582, 586, 445 P.2d 372, 376 (1968); *Honda v. Higa,* 52 Haw. 311, 312, 474 P.2d 708, 709 (1970). The record does not show that the findings of fact of the trial court are clearly erroneous.

---

[4] H.R.C.P. Rule 52(a).

The other issues urged upon this court by the appellant are without merit.

H. *William Burgess (Hale Kronenberg* with him on the briefs, Burgess & Gelber of counsel) for plaintiffs-appellants.

*Nelson S. W. Chang,* Deputy Attorney General *(George Pai,* Attorney General, with him on the brief) for defendant-appellee.