JAMES A. KIM, a minor, by ANNA SUR, his next friend,
Plaintiff-Appellant, *v.* STATE OF HAWAII,
Defendant-Appellee

NO. 6460

SEPTEMBER 18, 1980

RICHARDSON, C.J., OGATA, MENOR,
LUM AND NAKAMURA, JJ.

484

OPINION OF THE COURT BY NAKAMURA, J.

Plaintiff-Appellant James A. Kim appeals from a judgment in favor of Defendant-Appellee State of Hawaii in a negligence action brought under the State Tort Liability Act, HRS Chapter 662. Having examined the record and considered the questions presented but having found no error, we affirm the judgment.

Plaintiff's complaint alleged the State was negligent because it failed to institute adequate measures to protect him from a fellow student's violent attack it should have known was likely to occur. At the close of plaintiff's case in a bench trial, defendant moved to dismiss the action pursuant to the provisions of Rule 41(b), H.R.C.P., which permit a defendant in a non-jury trial to move for an involuntary dismissal of a case after the presentation of plaintiff's evidence.[1] The cir-

---

[1] Rule 41(b) reads:

(b) Involuntary Dismissal: Effect Thereof. For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against him. After the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to

cuit court granted the motion and subsequently entered judgment for defendant. The following issues are raised by plaintiff for our consideration:

1. Whether the circuit court correctly applied Rule 41(b), H.R.C.P., in reviewing plaintiff's evidence, or otherwise stated, whether plaintiff proved a case sufficient to withstand dismissal under the foregoing rule;

2. Whether the court erred in excluding certain records of the Department of Social Services and Housing from evidence; and

3. Whether there was bias in the conduct of the court that deprived plaintiff of a fair trial.

I.

Plaintiff James Kim was a student at Roosevelt High School, a public school in Honolulu with nearly 2,000 students, when the events that gave rise to this action occurred. He was then a student in the tenth grade who had been enrolled in school for only a few weeks. On the mornings of October 2 and 3, 1973, achievement tests were being administered to members of plaintiff's class. On both mornings several students in the classroom engaged in disruptive behavior apparently directed at plaintiff. The teacher undertook to quell the disturbances by remonstrating with the refractory students and by even locking them out of the classroom at one point.

Shortly after 11:00 on the morning of October 3, while students were in the process of completing the tests and leaving for lunch, the teacher became aware the unruly students were now engaged in conversation with someone in the hall outside the classroom. However, she could not see to

render any judgment until the close of all the evidence. If the court renders judgment on the merits against the plaintiff, the court shall make findings as provided in Rule 52(a). Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join a party under Rule 19, operates as an adjudication upon the merits.

whom they were talking. Minutes later, a large male student, a newly-enrolled tenth grader the teacher did not know at that time, entered the room and advanced determinedly and aggressively towards plaintiff.[2] Concluding she would be unable to cope with the situation alone, the teacher rushed from the classroom to summon the principal and the vice-principal who occupied offices adjacent to her classroom. Meanwhile, the intruding student began to beat plaintiff. The principal and the vice-principal arrived on the scene very shortly thereafter. The efforts of both men were required to overcome the assailant and restore order. By then, plaintiff had sustained serious injuries at the hands of the intruding student.

On September 24, 1974, while still a minor, plaintiff filed this action against the State of Hawaii through Anna Sur, his guardian ad litem. Plaintiff alleged his injuries were a proximate result of defendant's negligence in failing to adequately police, control, and supervise the classroom where plaintiff had been attacked and in otherwise neglecting to adopt measures to ensure his safety.

## II.

Plaintiff initially contends the trial court misapplied Rule 41(b) in granting defendant's motion for involuntary dismissal. He argues the court placed undue emphasis on plaintiff's testimony, which it discounted in part, and that it "overlooked" other testimony. In short, he implies the circuit court weighed the evidence and failed to view it, and all reasonable inferences therefrom, in a light most favorable to plaintiff. In his opinion, the trial court's application of the rule, following the interpretation given Rule 41(b), Fed. R. Civ. P., by the federal courts, was at odds with the more enlightened ap-

---

[2] The trial court's findings of fact included the following:

[ ] . . . entered [the room] and deliberately advanced in animal-like fashion, like a monster, towards the area where the Plaintiff was taking his exam, overturning several student chair-desks.

At the time, [ ] . . . [stood] five feet ten inches tall and [weighed] approximately one hundred and seventy pounds, and Plaintiff James Kim was approximately the same size and weight.

proach of some state courts and with relevant Hawaii precedent. He also argues the motion should have been denied under any circumstance because there was a preponderance of evidence substantiating a right to relief even under the federal test. We do not find the arguments persuasive on either score.

### A.

A defendant in a non-jury trial may move, pursuant to Rule 41(b), H.R.C.P., for a dismissal of the case at the close of plaintiff's evidence on the ground that plaintiff has shown no right to relief upon the facts and the applicable law. When the motion is interposed at what ordinarily is a trial's midpoint, the court may determine the facts and award judgment to defendant at this juncture. Or at its discretion, action on the motion may be deferred until the close of all evidence. The rule is an exactly-worded counterpart of Rule 41(b) of the Federal Rules of Civil Procedure.

The pertinent federal rule as originally adopted in 1938 did not define a judge's function when a motion for involuntary dismissal was made at the close of plaintiff's evidence in a non-jury trial.[3] The ambiguity resulted in conflicting interpretations within the federal judiciary. In several circuits, namely the Sixth, Seventh, and Ninth, the Courts of Appeals adopted a view that the judge as the trier of facts could weigh the evidence and award judgment on the merits. *Bach v. Friden Calculating Machine Co.*, 148 F.2d 407 (6th Cir. 1945);

---

[3] The federal rule originally read:

(b) Involuntary Dismissal: Effect Thereof. For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against him. After the plaintiff has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction or for improper venue, operates as an adjudication upon the merits.

*Gary Theatre Co. v. Columbia Pictures Corp.*, 120 F.2d 891 (7th Cir. 1941); *Young v. United States*, 111 F.2d 823 (9th Cir. 1940). The Courts of Appeals of the Third and Fourth Circuits, on the other hand, held the judge's role on such a motion paralleled his limited function on a motion for directed verdict in a jury trial, *i.e.*, to decide whether plaintiff's evidence, viewed in the most favorable light, was sufficient to create an issue of fact for the jury. *Federal Deposit Insurance Corp. v. Mason*, 115 F.2d 548 (3rd Cir. 1940); *Whitley v. Powell*, 159 F.2d 625 (4th Cir. 1946).

The conflict among the circuits was resolved through an amendment of the rule in 1948 when the following language was added:

> In an action tried by the court without a jury the court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence. If the court renders judgment on the merits against the plaintiff, the court shall make findings as provided in Rule 52(a).

This left little doubt on which view prevailed. That a judge considering a motion for involuntary dismissal in a non-jury trial was expressly endowed thereby with authority to weigh and determine the evidence and to render a judgment on the merits was unmistakably clear. If doubt remained, an examination of the Advisory Committee's Note, specifically stating that the view of the Sixth, Seventh, and Ninth Circuits was incorporated in the amendment, would have dispelled any uncertainty.[4] Rule 41(b), H.R.C.P., was adopted after this pointed alteration of the federal rule.

---

[4] The Advisory Committee's Note on amended Rule 41(b) read as follows:

In some cases tried without a jury, where at the close of plaintiff's evidence the defendant moves for dismissal under Rule 41(b) on the ground that plaintiff's evidence is insufficient for recovery, the plaintiff's own evidence may be conflicting or present questions of credibility. In ruling on the defendant's motion, questions arise as to the function of the judge in evaluating the testimony and whether findings should be made if the motion is sustained. Three circuits hold that as the judge is the trier of the facts in such a situation his function is not the same as on a motion to direct a verdict, where the jury is the trier of the facts, and that the judge in deciding such a motion in a non-jury case may pass on conflicts

have been nonsuited if he did not prove the allegations of his complaint. *(Testa v. Kahahawai,* 18 Haw. 209; *McMillan v. Mobley,* 169 Ga. 511, 150 S. E. 843) Under rule 41(b) a motion to dismiss is granted only if the plaintiff has shown "no right to relief."

42 Haw. at 310-11. Thus, we held that a variance between the allegations of the complaint and the proof was not necessarily fatal. *Makuakane* likewise does not govern the issue now before us because the precise question was not properly posed for determination there. A review of that case discloses the trial court evaluated the evidence and entered findings of fact and conclusions of law, some of which were reversed on appeal. The other earlier decisions cited are also without precedential value as they involved motions for nonsuit brought before the advent of Rule 41(b).

All of this is not to say the trial court's authority may be exercised to freely abort trials. Sound discretion would decree that final judgment on the merits be withheld until the close of all evidence where doubts on the preponderance of evidence remain at the close of plaintiff's case. Should expressed fears of a "promiscuous use" of the power materialize, we would not hesitate to condemn the indiscriminate utilization of Rule 41(b) upon review. *See Riegel Fiber Corp. v. Anderson Gin Co.,* 512 F.2d 784, 793 n. 19 (5th Cir. 1975); *White v. Rimrock Tidelands, Inc.,* 414 F.2d 1336, 1340 (5th Cir. 1969).

### B.

Having decided the trial court was authorized to weigh the evidence and determine the case on the merits, we next focus on whether it committed error in dismissing the action and entering judgment for the defendant.

In *Miller v. Yoshimoto,* 56 Haw. 333, 536 P.2d 1195 (1975), we recognized that "public school systems have a duty of reasonable supervision of the students entrusted to them" and concluded the State of Hawaii "has a duty of reasonably supervising the public school students of Hawaii during their required attendance and presence at school. . . ." 56 Haw. at

340, 536 P.2d at 1199. In our opinion, this duty entailed "general supervision of the students, unless specific needs, or a dangerous or a likely to be dangerous situation calls for specific supervision." *Id.* Considering defendant's acts and alleged omissions under these standards, we are unable to state the dismissal of the action constituted error.

The trial court concluded defendant had exercised reasonable general supervision at relevant times over the students of Roosevelt High School, including those in the classroom where the attack occurred. The conclusion was premised on findings on the existence of rules and regulations of the Department of Education, the adoption of specific procedures designed to control the activities of students by the school, the monitoring of hallways, and the general supervision of activities in the classroom by the teacher, all corroborated by the record. That the teacher also undertook to curb the moderately disruptive behavior of several students assigned to her class on the days in question is reflected by the record. Hence, the crucial questions of fact are whether defendant should have been aware of the imminent danger of an intrusion by a student with a propensity for violence and whether the teacher's reaction to the eminent danger posed by the actual invasion of her classroom was a prudent response thereto.

The only inkling of the development of a potentially dangerous situation was the disruptive behavior of three students in the classroom. However, the conduct consisting of "giggling, scooting of chairs, whispering, and some gestures" was not such that would give rise to a probability of an invasion of the classroom by another student with a proclivity for physical harm. As the peril was neither known nor reasonably foreseeable, there was no basis for the establishment of "specific supervision" to cope with the danger. Furthermore, the teacher's actions upon the menacing entry of a large male student, obviously bent on harm, were reasonable under the circumstances.

Where findings of fact are rendered by a trial court, Rule 52(a), H.R.C.P., provides they "shall not be set aside unless clearly erroneous, and due regard shall be given to the oppor-

tunity of the trial court to judge of the credibility of the witnesses." And "[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364 at 395 (1948); *Honda v. Higa*, 52 Haw. 311, 313, 474 P.2d 708, 710 (1970); *Frey v. Goebert*, 52 Haw. 308, 310, 474 P.2d 537, 538 (1970). Our review of the entire evidence does not leave us with a conviction that mistakes were committed with respect to the judge's findings. Nor can we say the conclusions representing an application of the law to these facts were erroneous.

III.

Plaintiff further asserts the trial court committed error in excluding evidence consisting of certain records of the State Department of Social Services and Housing (DSSH) and testimony related to their contents. The records contained information secured by the DSSH in the administration of a public assistance program that allegedly would have demonstrated the assailant's propensity for violence. In plaintiff's opinion, the ends of justice overrode the statutory prohibition against the disclosure of information found in HRS § 346-10 that was the ground for the court's adverse ruling.[10] Citing

---

[10] At the time of trial, HRS § 346-10 (since amended) read in pertinent part:

The department shall promulgate and enforce such rules as may be necessary to prevent improper acquisition or use of the confidential information. Any information secured pursuant to this section by the officials or employees may be used in connection with their official duties or within the scope and course of their employment but not otherwise, and shall be kept in confidential records or files, which shall not be subject to any other law permitting inspection of public records. The information shall be considered privileged and shall not be released without the specific written waiver of the applicant or recipient concerned at any stage or in any form in a judicial or administrative proceeding, either voluntarily or as a result of any subpoena or judicial process except where the proceeding is for purposes directly connected with the administration of child welfare services, old age assistance, aid to children, aid to the blind, or other forms of public assistance. The use of the records, papers, files, and other communications of the department or its agents by any other agency or department of government to which they may be furnished shall be limited to the purposes for which they are furnished.

*United States v. Nixon*, 418 U.S. 683, 713 (1974), plaintiff claims "a generalized interest in confidentiality" can not "prevail over the fundamental demands of due process." He argues *Tighe v. City and County*, 55 Haw. 420, 520 P.2d 1345 (1974), also supports his position that a state interest in keeping material secured in the administration of public assistance programs confidential is of "lesser importance when balanced against the right of each individual litigant to the most accurate and complete information available. . . ." (Appellant's Op. Brief at 28). In our opinion, the case citations are clearly inapposite. However, there is no need for a discussion of due process, public policy, or the cited cases because there were other basic considerations rendering the proffered evidence inadmissible.

The records and testimony in question were offered to demonstrate assailant's propensity for inflicting harm and defendant's knowledge of this tendency. But plaintiff does not aver that persons charged with the supervision of students at relevant times and places were privy to the information in the records. HRS § 346-10 expressly denies access to information secured by the DSSH in the administration of public assistance programs, except to persons within the department on an extremely limited basis. There is no indication the statute was not observed and the record is devoid of anything else that could have given rise to an inference that those responsible for student conduct at Roosevelt were aware of the contents of these DSSH records. Under the circumstances, what was offered to the trial court as evidence would not have furthered proof of an awareness of "a likely to be dangerous situation" calling for "specific supervision." Where the records and related testimony could neither establish nor create a reasonable inference of the requisite awareness on the part of responsible school personnel, the information was irrelevant and immaterial to the issues in the case. *See generally* MCCORMICK ON EVIDENCE § 185 (2d ed. 1972). *See also State v. Apao*, 59 Haw. 625, 640, 586 P.2d 250, 260 (1978); *State v. Dameg*, 51 Haw. 308, 310, 459 P.2d 193, 194 (1969); *Territory v. Henry*, 39 Haw. 296, 298 (1952).

## IV.

Plaintiff's final point on appeal is that the trial court displayed a bias which deprived him of a fair trial. We have examined the trial transcript and find this claim of prejudice unsubstantiated.

Affirmed.

*Edward Y. N. Kim* for plaintiff-appellant.

*Howard Gravelle, Jr. (Wallace W. Weatherwax* on the brief), Deputy Attorneys General, for State of Hawaii.