Pamela Kay GATHRIGHT, Individually and as Parent
and Next Friend of Chris NEWTON, and Minor *v.*
LINCOLN INSURANCE COMPANY, as Liability
Carrier for the Pulaski County Special
School District, and Louise McCUMBER

84-277 688 S.W.2d 931

Supreme Court of Arkansas
Opinion delivered May 6, 1985
[Rehearing denied June 10, 1985.]

*Gary Eubanks & Associates*, by: *Gary L. Eubanks* and *James Gerard Schulze*, for appellant.

*Wright, Lindsey & Jennings*, for appellee.

DARRELL HICKMAN, Justice. Chris Newton, 8, was severely brain damaged when he hanged himself at school with a "bathroom pass" made and provided by this third grade teacher, Jack Taylor. The pass was made from quarter inch plywood, was approximately four inches wide and eight inches long, and had an 18 to 20 inch nylon cord attached. Students in Taylor's class used the pass, often wearing it around their necks, to show they were authorized to be out of the classroom. According to Greg Peters, a third grade student and the only eye witness, Chris said he was going to hang himself and, after several attempts, finally lodged the pass in the restroom partition. Chris put his head and neck through the looped cord. Greg left because he said he thought Chris was only teasing and was standing on his toes. Two other students found Chris. The principal was ultimately called and Chris was hospitalized. Chris' mother sued the teacher, the principal, the school district and Louise McCumber, a district employee in charge of planning, research, and safety. The teacher, Jack Taylor, and principal, Douglas Newkirk, consented to judgment in the amount of $400,000 and were dismissed from

the suit. A summary judgment was entered for the district's liability carrier, Lincoln Insurance Company, and Louise Mc-Cumber and that ruling is appealed.

The appellees moved for summary judgment on the basis that the cause of the accident was the intentional act of Chris, thus exonerating them from any liability. The trial judge agreed. The judge also ruled that the testimony of a safety expert was not needed to aid the jury in deciding if there was negligence. The appellant questions both rulings.

In the appellant's argument it is contended that "the school district should have ordered the superintendent to establish a safety program. The superintendent of schools should establish a policy that there will be systematic hazard identification and hazard control. He should also hire a professional adequately trained in safety engineering. He should have made sure that the person in charge of school property recognized his or her responsibility to identify and recognize potentially catastrophic hazards." The appellant argues that the failure to institute an adequate safety program was the cause of the injury. During his deposition the superintendent said that the school board has certain safety policies with regard to such things as playground apparatus, fire drills, and transportation. He stated that the local schools have their own authority to make rules concerning student control.

Louise McCumber, coordinator of research, planning and safety, visited the schools to observe and determine possible needs with regard to safety or health. She served as liaison between the administration and the superintendent and school board. Ms. McCumber has a high school education as well as training through the American Society of Safety Engineers and the National Safety Council. She is a member of both organizations and has taught courses in safety in elementary schools since 1963. She was hired by the school district in 1966.

The parties agree that the duty owed by the district is that of ordinary care. That has been defined as "adequate general supervision" not constant supervision. *Woodsmall* v. *Mt. Diablo Unified School Dist.*, 188 Cal. App. 2d 262, 10 Cal. Rptr. 447 (1961).. "The duty of reasonable supervision does not require the appellee to provide personnel to supervise every portion of the school buildings and campus area." *Miller* v. *Yoshimoto*, 56

Hawaii 333, 536 P.2d 1195 (1975). ". . . [S]chools are not intended to be insurers of the safety of their pupils. . . ." *Miller* v. *Griesel*, 261 Ind. 604, 308 N.E.2d 701 (1974). "Broadly speaking, what is reasonable and what is foreseeable are the criteria in supervising classes. The standard is again one of 'ordinary prudence.' " Proehl, *Tort Liability of Teachers*, 12 Vand. L. Rev. 723 (1959). Nor does ordinary care require a safety program such as that suggested by the appellant. See *Morris* v. *Ortiz*, 103 Ariz. 119, 437 P.2d 652 (1968). A school is not a factory that might have rigid safety regulations. We have said "an attempt to shelter a growing child from every possible danger is manifestly futile." *Ising* v. *Ward*, 231 Ark. 767, 332 S.W.2d 495 (1960). We decline to rule that the lack of a more detailed supervisory safety program than that used by the district was a breach of its duty. The question of what duty is owed is always one of law and never one for the jury. *Keck* v. *American Employment Agency*, 279 Ark. 294, 652 S.W.2d 2 (1983).

■■ Before an act can be said to be the proximate cause of an injury, the injury must be the probable and natural consequence of that act. *Cragar* v. *Jones*, 280 Ark. 549, 660 S.W.2d 168 (1983). There was no issue for the trier of fact because we find that reasonable minds could not differ as to whether the lack of comprehensive safety programs contemplated by the appellant or Ms. McCumber's training was the proximate cause of Chris Newton's injury. *Keck* v. *American Employment Agency, supra.*

The sub-issue presented, whether reasonable minds could differ that the issuance of that type of pass was negligence which was the proximate cause of the injury, must be rejected because the theory of vicarious liability is unavailable to the appellant for the following reason. After the consent judgment was entered, the insurance carrier specifically requested a ruling that, by virtue of the settlement, neither they nor the district could be held liable for any negligent act of the principal or teacher. The trial court granted the request and ruled "that upon settling such cause no liability of either Mr. Taylor or Mr. Newkirk could be imposed upon Lincoln Insurance Company." This ruling was not appealed nor argued to be erroneous. In order to reverse we would have to find either that the ineffectiveness of the district's safety program was a breach of the duty the district owed to its students which was the proximate cause of the injury or that the district was vicariously liable for the negligent act of its employees. Since we

reject the first basis and since the second was rejected by the trial court and that decision was not appealed, we affirm.

We realize that our conclusions differ somewhat from the trial court's in that we do not consider whether Chris' acts were the efficient intervening cause of the injury. It is unnecessary to reach that point. Since we find that reasonable minds could not differ that the proximate cause of the accident was not the district's safety program, no genuine issue of material fact was presented and summary judgment was proper. ARCP Rule 56. Our decision makes the issue as to admissibility of expert testimony moot.

Affirmed.