**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-20-0000379**
**04-OCT-2024**
**07:57 AM**
**Dkt. 95 MO**

NO. CAAP-20-0000379

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI


REINA KANAKAOLE, individually and as next of friend for I.K.,
a minor, Plaintiffs/Counterclaim Defendants-Appellants,
v.
STATE OF HAWAII, Defendant/Counterclaimant/
Cross-claimant/Cross-claim Defendant-Appellee,
and
STEPHANIE ALBORNOZ, Defendant-Appellee,
and
A.K., a minor; JONATHAN LEFITI and JENNIE LEFITI,
Defendants/Cross-claimants-Appellees,
and
DOE DEFENDANTS 1-100, Defendants


APPEAL FROM THE CIRCUIT COURT OF THE THIRD CIRCUIT
(CASE NO. 3CC161000354)


**MEMORANDUM OPINION**
(By: Leonard, Acting Chief Judge, Hiraoka and Nakasone, JJ.)


Reina **Kanakaole**, for herself and as next friend of a minor, I.K.K. (**IKK**), sued the **State** of Hawaiʻi, Stephanie **Albornoz**, and others[1] in the Circuit Court of the Third Circuit. Kanakaole alleged that IKK was a public school student in Albornoz's kindergarten class when he was sexually assaulted by a classmate because of the State's and Albornoz's negligence. After a bench trial on liability, the court entered findings of

---

[1] The other defendants are not parties to this appeal.

fact and conclusions of law (**COL**) on October 30, 2019.[2]  Judgment for the State and Albornoz was entered on February 24, 2020. Kanakaole appealed.  We remanded for entry of an appealable judgment.  The **Amended Final Judgment** was entered on January 22, 2021.  We affirm.

### Points of Error

Kanakaole challenges COL nos. 2, 4, 5, 6, 7, and 8. She also contends the trial court erred by ruling she did not prove "a causal connection between the alleged harm or injury and any breach of duty by the State" in the liability-only bench trial.

### Standard of Review

We review conclusions of law de novo under the *right/wrong* standard.  O'Grady v. State, 140 Hawaiʻi 36, 43, 398 P.3d 625, 632 (2017).  A ruling involving mixed questions of fact and law is reviewed under the *clearly erroneous* standard because it implicates the facts and circumstances of the specific case. Id.  A ruling supported by the trial court's findings of fact and applying the correct rule of law will not be overturned.  Id.

### Facts of the Case

The trial court's findings of fact are binding on appeal because Kanakaole does not challenge them.  Okada Trucking Co. v. Bd. of Water Supply, 97 Hawaiʻi 450, 459, 40 P.3d 73, 82 (2002).  On November 7, 2011, IKK and **AKK** were five-year-old male students in Albornoz's kindergarten class.  They were disrupting a class lesson.  Albornoz gave them three warnings, then sent them to their tables for "time out."  The other students were seated on the classroom carpet in front of Albornoz for the lesson.

---

[2]     The Honorable Henry T. Nakamoto presided.

NOT FOR PUBLICATION IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER

IKK's and AKK's tables were near or next to each other and both were near the open classroom door. The boys weren't sitting properly at their tables. Albornoz interrupted the lesson and gave the boys a choice to stop playing around or lose recess time. They continued to play around. Albornoz decided to speak to them about their behavior during recess. She heard only playful chatter between the boys while they were on time-out; she heard no verbal protest, angry objection, or call for help from either boy. She saw no physical struggle.

No more than ten minutes after IKK and AKK had been sent to time-out, Linda **Likiche** came to the classroom. She was the English Language Learner (**ELL**) tutor, and had come to take IKK for a scheduled lesson. As Likiche approached the open door she saw IKK sitting in a chair with his legs spread apart. AKK was kneeling with his head in IKK's groin area. When the boys noticed Likiche, AKK stood up and wiped his mouth. Likiche saw that the leg of IKK's shorts was pulled up. IKK had to pull down the leg of his shorts to cover himself when he stood up. Likiche was in shock believing she had seen what could have been oral-genital contact between the children. Likiche acknowledged Albornoz as she took IKK from the classroom, but didn't tell Albornoz what she had just seen.

Albornoz saw no danger or risk of harm to either student during their time-out. IKK did not call out to Albornoz when AKK touched his pants or body. IKK did not stand up, walk away, yell, fight with AKK, or act in any other way that would have given Albornoz notice about the misconduct. Albornoz did not see the act of inappropriate touching given her location in the classroom and her activity with the other students. Only later that day did Albornoz learn that Likiche had seen what she believed was AKK's mouth on IKK's penis when she came into the classroom to pick up IKK.

There was no evidence that Albornoz acted other than in the course and scope of her employment as a teacher for the State Department of Education (**DOE**), or that she acted with malice,

spite or ill will toward IKK while she conducted her kindergarten class that day.

Brad **Asakura** was the school counselor. He interviewed both boys. AKK told him, "I had to put my head down on my desk because I wasn't listening. I was underneath [IKK's] desk looking at his boto. I was touching his boto with my han[d]." AKK said that IKK took his penis out, said "go under my desk" and "touch my boto."

Asakura asked AKK if he touched IKK's penis with anything besides his hand.

AKK said "no."

Asakura asked again, "just with hands?"

AKK said "yes."

Asakura asked him if he was telling the truth.

AKK said "no," but he didn't want to say what else happened.

Asakura asked him if anyone had touched him like that before.

AKK said "no."

Asakura asked AKK if he had touched anyone like that before.

AKK said "yes," IKK at AKK's desk.

Asakura then interviewed IKK, who said he was sitting at his desk and AKK was under the desk. He claimed he told the ELL teacher (Likiche) that AKK was only using his hand. After consulting with school administrators, Asakura contacted the Hawaiʻi County Police Department, Child Protective Services, and the boys' parents.

### Analysis

A plaintiff claiming negligence must prove **(1)** a duty recognized by the law that the defendant owed to the plaintiff; **(2)** a breach of the duty; **(3)** that the defendant's breach was the legal cause of the plaintiff's harm; and (4) actual damages. O'Grady, 140 Hawaiʻi at 43, 398 P.3d at 632.

**(1)** On the issue of duty, Kanakaole argues "the trial court erred in its conclusion[s] of law (Nos. 4, 5, 6, and 8) that the State owed no duty to prevent inappropriate touching in a classroom." Kanakaole's argument conflates the trial court's conclusion of law about the State's legal duty with its mixed finding and conclusion that the risk of harm to IKK was not reasonably foreseeable.

The existence of a legal duty "is entirely a question of law." Bidar v. Amfac, Inc., 66 Haw. 547, 552, 669 P.2d 154, 158 (1983) (citing W. Prosser, Handbook of the Law of Torts § 37, at 206 (4th ed. 1971)). Here, the trial court concluded:

> 4. The State, standing in loco parentis, owes students and their parents a duty to take reasonable steps to prevent reasonably foreseeable harms to its students. Doe Parents No. 1 v. State, Dep't of Educ., 100 Haw. 34, 72-74, 58 P.3d 545, 583-85 (2002), as amended (Dec. 5, 2002[)]. There is no evidence that the State knew or reasonably should have anticipated that AKK or IKK would participate in an inappropriate touching while on time out in their kindergarten classroom on November 7, 2011, even though Ms. Albornoz knew the boys were not taking their time out properly by quietly placing their heads down on their desks.

The first sentence of COL no. 4 is right. In Doe Parents No. 1 v. State, 100 Hawaiʻi 34, 58 P.3d 545 (2002), the supreme court held that the DOE, "standing in loco parentis, owes students and their parents a duty to take reasonable steps to prevent reasonably foreseeable harms to its students." 100 Hawaiʻi at 74, 58 P.3d at 585. The supreme court also held that the State's duty arising from the in loco parentis relationship is "to take whatever precautions are necessary reasonably to ensure the safety and welfare of the children entrusted to its custody and control *against harms that the DOE anticipates, or reasonably should anticipate*." Id. at 80, 58 P.3d at 591 (emphasis added).

The second sentence of COL no. 4 is a mixed finding and conclusion. It is not clearly erroneous. It is supported by the trial court's unchallenged findings of fact. Kanakaole cites no

evidence in the record that Albornoz could have anticipated, or reasonably should have anticipated, that AKK would touch IKK's penis if the boys were sent into time-out together.  Instead, she argues that even in "the absence of notice of a specific inappropriate touching, the State still owes a duty of generalized supervision in this case to stop prohibited student conduct, which *may* give rise to inappropriate touching." (Emphasis added.)  She cites <u>Miller v. Yoshimoto</u>, 56 Haw. 333, 536 P.2d 1195 (1975) and <u>Kim v. State</u>, 62 Haw. 483, 616 P.2d 1376 (1980).  Neither case supports her argument.

In <u>Miller</u>, the plaintiff was hit by a rock thrown by another student on school grounds.  The supreme court held that the DOE did not owe a duty to supervise the area from where the rock was thrown because the plaintiff "failed to adduce any evidence showing that the area in which [she] was injured was dangerous in character or likely to be dangerous because of known deviant conduct of students or of others, requiring specific supervision by the appellee."  56 Haw. at 341, 536 P.2d at 1200.

In <u>Kim</u>, the plaintiff was beaten by another student who entered a classroom from the hallway.  The supreme court held that the DOE did not owe a duty to supervise either the assailant or the plaintiff because the circumstances of which it was aware were "not such that would give rise to a probability of an invasion of the classroom by another student with a proclivity for physical harm.  As the peril was neither known nor reasonably foreseeable, there was no basis for the establishment of 'specific supervision' to cope with the danger."  62 Haw. at 492, 616 P.2d at 1382.

The trial court concluded:

> 5.    The State's duty reasonably to supervise students "entails 'general supervision of students, unless specific needs, or a dangerous or likely to be dangerous situation calls for specific supervision.'["]  <u>Miller v. Yoshimoto</u>, 56 Haw. 333, 340, 536 P.2d 1195, 1199 (1975) and <u>Kim v. State of Hawaii</u>, 62 Haw. 483, 485, 616 P.2d 1376 (1980).  There is no evidence that the State had notice or should have foreseen that the 5 year old boys were at risk for participating in inappropriate touching as would impose

> on the State a duty to specifically supervise these students to avoid the risk of such behavior on November 7, 2011.

The first sentence of COL no. 5 is right. The second sentence is a finding of fact. Kanakaole cites no evidence in the record showing the State or Albornoz should have foreseen that AKK would touch IKK's penis if the boys were sent into time-out together. The second sentence of COL no. 5 is not clearly erroneous.

The trial court concluded:

> 6. The State had no notice or evidence that either IKK or AKK had previously participated in any inappropriate touching or other socially unacceptable behavior at school which would make it reasonably foreseeable that IKK and AKK would participate in or permit an act of inappropriate touching in their open kindergarten classroom.

COL no. 6 is a mixed finding and conclusion. Kanakaole cites no evidence in the record of IKK or AKK inappropriately touching each other or anyone else, or behaving in any other way that could make it reasonably foreseeable that AKK would touch IKK's penis if the boys were sent into time-out together. COL no. 6 is not clearly erroneous.

The trial court concluded:

> 8. In the context of determining the existence and scope of a duty, foreseeability is a question of law for the court to determine. See Ballard v. Uribe, 41 Cal.3d 564, 224 Cal. Rptr. 664, 715 P.2d 624, 629 n. 6 (1986); Knoll v. Bd. of Regents of the Univ. of Neb., 258 Neb. 1, 601 N.W.2d 757, 762-63 (1999); Clohesy v. Food Circus Supermarkets, Inc., 149 N.J. 496, 694 A.2d 1017, 1020-21 (1997) cited with approval in Pulawa v. GTE Hawaiian Tel, 112 Haw. 3, 13, 143 P.3d 1205, 1215 (2006). The State had no duty to prevent the unexpected misbehavior involving inappropriate touching by the children given their young age, and the lack of any knowledge or prior circumstances which would have made the boys' behavior foreseeable when they misbehaved on their time out in the public setting of a kindergarten classroom.

The first sentence of COL no. 8 is right. In Pulawa v. GTE Hawaiian Tel, 112 Hawaiʻi 3, 143 P.3d 1205 (2006), the supreme court held that *foreseeability* is a question of law for the court when determining the existence and scope of a duty, but a question of fact when determining breach of duty and causation. Id. at 13, 143 P.3d at 1215.

7

The second sentence of COL no. 8 is a mixed finding and conclusion. The trial court concluded that the State did not owe a duty to Kanakaole (or IKK) to prevent IKK and AKK from being sent into time-out together, or to continuously monitor their conduct, because there was no evidence that Albornoz should reasonably have foreseen that AKK would touch IKK's penis during the time-out. The second sentence of COL no. 8 is not clearly erroneous. See O'Grady, 140 Hawaiʻi at 51, 398 P.3d at 640 ("[F]oreseeability, as it relates to duty, is a question of law that takes into account the presence and extent of the risks associated with particular conduct."); Pulawa, 112 Hawaiʻi at 14, 143 P.3d at 1216 ("Inasmuch as the issue of foreseeability in the context of duty is a question of law for the court to resolve, the court, not the trier of fact, must determine the existence and scope of duty, if any, owed by [the defendant] to the plaintiffs.").

**(2)** On the issue of breach, Kanakaole argues the trial court erred in concluding the State did not breach its duty of care. The court concluded:

> 7. If the harm is not reasonably foreseeable, the defendant will not be deemed to have breached the duty of care that he or she owes to a foreseeable plaintiff. See, e.g., Knodle, 69 Haw. at 385, 388, 742 P.2d at 383, 385 (noting that what is reasonable under the circumstances of any given negligence case for purposes of determining whether the defendant's conduct breached his or her duty of care "is marked out by the foreseeable range of danger" and, thus, there must be "some probability of harm sufficiently serious that [a reasonable and prudent person] would take precautions to avoid it" (citations omitted)). Doe Parents No. 1 v. State, Dep't of Educ., 100 Haw. 34, 71-72, 58 P.3d 545, 582-83 (2002), as amended (Dec. 5, 2002). The State did not breach the duty of care owed to Plaintiff.

The first sentence of COL no. 7 is right. See Knodle v. Waikiki Gateway Hotel, Inc., 69 Haw. 376, 385, 742 P.2d 377, 383 (1987); Doe Parents No. 1, 100 Hawaiʻi at 71-72, 58 P.3d at 582-83 ("[I]f the State has entered into a custodial relationship with a particular person, then the State owes that person an affirmative duty to take reasonable steps to prevent any harm — *which the*

8

*State foresees or should reasonably anticipate* — befalling its ward, either by his or her own hand or by that of another.") (emphasis added) (footnote omitted).

The second sentence of COL no. 7 is a mixed finding and conclusion. Albornoz putting IKK and AKK into time-out together without continuously monitoring their conduct could not have been a breach of her general duty "to take reasonable steps to prevent reasonably foreseeable harms to [her] students[,]" Doe Parents No. 1, 100 Hawaiʻi at 74, 58 P.3d at 585, because there was no evidence she should reasonably have foreseen that AKK would touch IKK's penis. The second sentence of COL no. 7 is not clearly erroneous.

**(3)** On the issue of causation, the trial court concluded:

> 2. O'Grady v. State of Hawaii, 140 Hawaii 36, 398 P.3d 625 (2017) sets out a plaintiff's obligation to establish causation as a necessary element of a plaintiff's case in a bifurcated bench trial on liability only. Plaintiff here has failed to present any evidence establishing causation and incorrectly asserts in Plaintiff's Trial Brief filed September 27, 2019 at page 5 that ". . . the only issue for this liability-only trial is whether Defendants owed a duty and whether this duty was breached." Plaintiff is wrong on the law and deficient in evidence establishing a causal connection between any alleged harm or injury and any breach of duty by the State.

Like this case, O'Grady involved a bifurcated bench trial on liability only. 140 Hawaiʻi at 41, 398 P.3d at 630. The trial court concluded the State owed a duty of care to the O'Gradys and found a breach of duty, but held that the O'Gradys did not prove causation. Id. In the O'Gradys' appeal, the supreme court held the trial court "misapprehended the relevant legal standard" for causation, id. at 48, 398 P.3d at 637, and remanded the case "for application of the proper legal standard[,]" id. at 52, 398 P.3d at 641. The case would not have been decided that way if causation wasn't a necessary element of a plaintiff's proof in a liability-only bench trial. The first sentence of COL no. 2 is right.

The second and third sentences of COL no. 2 are mixed findings and conclusions.  In O'Grady the supreme court applied a two-step analysis to determine whether the defendant's conduct was the legal cause of the plaintiff's injuries: (a) the defendant's conduct is a substantial factor in bringing about the harm, and (b) there is no rule of law relieving the defendant from liability because of the manner in which their negligence resulted in the harm.  140 Hawaiʻi at 44, 398 P.3d at 633.  Here, even if Albornoz's conduct — putting IKK and AKK into time-out after they continued disrupting a lesson after three warnings and continuing the lesson for the rest of the students — was a substantial factor in bringing about harm to IKK, "the remaining issue is whether [Albornoz] should be relieved of liability because a subsequent act or occurrence was not reasonably foreseeable under any rational view of the evidence."  Id. at 51, 398 P.3d at 640.  The trial court found that Kanakaole "failed to present any evidence establishing causation" and was "deficient in evidence establishing a causal connection between any alleged harm or injury and any breach of duty by the State."  Kanakaole cites no evidence in the record that shows Albornoz could have anticipated, or reasonably should have anticipated, that AKK would touch IKK's penis if the boys were sent into time-out together.  The second and third sentences of COL no. 2 are not clearly erroneous.

**Conclusion**

The Amended Final Judgment entered on January 22, 2021, is affirmed.

DATED:  Honolulu, Hawaiʻi, October 4, 2024.

On the briefs:

Joseph P.H. Ahuna, Jr.
David K. Ahuna,
for Plaintiffs/Counterclaim
Defendants-Appellants.

Caron M. Inagaki,
Kathy K. Higham,

/s/ Katherine G. Leonard
Acting Chief Judge

/s/ Keith K. Hiraoka
Associate Judge

/s/ Karen T. Nakasone
Associate Judge

Willliam K. Awong,
Deputy Attorneys General,
State of Hawaiʻi,
for State of Hawaiʻi.