STATE OF HAWAII, Plaintiff-Appellant, *v.* ROBERT YOON, Defendant-Appellee

NO. 8328

(CRIMINAL NO. 54971)

APRIL 18, 1983

LUM, ACTING C.J., NAKAMURA, PADGETT, AND HAYASHI, JJ., AND CIRCUIT JUDGE AU ASSIGNED BY REASON OF VACANCY

OPINION OF THE COURT BY NAKAMURA, J.

The question posed by the State of Hawaii's appeal from the dismissal of an indictment against Robert Yoon is whether the offenses charged therein were covered by an earlier plea bargain. The Circuit Court of the First Circuit found they were on the basis of evidence presented by the prosecutors who negotiated the agreement. Since we cannot say the court clearly erred, we affirm the order dismissing the indictment.

I.

The plea bargain in question stemmed from a meeting on October 2, 1980 attended by the Prosecuting Attorney of the City and County of Honolulu, his Acting First Deputy, and the Chief Assistant Public Defender of the State. The prosecutors and defense counsel there agreed Robert Yoon (the defendant) would plead guilty to seven counts of Theft and one count of Possession of a Firearm by a Person Convicted of Certain Crimes on condition that the prosecution would not seek extended prison terms on the resulting convictions and would move to have nolle prosequi entered on a First Degree Armed Robbery charge. The foregoing represented the sum total of the formal charges then pending against the defendant. As agreed, guilty pleas were entered on his behalf and a motion for the entry of nolle prosequi was filed by the prosecution on October 22, 1980. Robert Yoon was subsequently sentenced to concurrent five year terms of imprisonment on the convictions.

But unbeknownst to the prosecutors and defense counsel who negotiated the agreement, as well as the defendant, a police report on the defendant's alleged involvement in other

criminal activity related to the sale of drugs in April of 1980 had been transmitted to the Office of the Prosecuting Attorney on October 10, 1980. And the Grand Jury of the First Circuit returned an indictment charging Robert Yoon with two counts of Promoting a Dangerous Drug in the Second Degree on November 22, 1980 at the instance of a Deputy Prosecuting Attorney. The prosecutor who sought the indictment had not been apprised of the negotiated agreement.

The Grand Jury action resulted in further discussion of the plea bargain among the Prosecuting Attorney, his First Deputy, and the Chief Assistant Public Defender. At this meeting the Public Defender's position was "that it was not fair for the defendant to be facing two more charges which allegedly took place in the month of April, 1980"; he claimed the purpose of the agreement was to resolve all of the cases then pending against the defendant. Mr. Nakagawa, the Prosecuting Attorney, concurred with the Public Defender because the charges "would have been resolved had . . . [the parties] been aware of their existence at the time the initial agreement was reached." The Public Defender was thus given to understand there would be no prosecution of the offenses. Shortly, however, Mr. Nakagawa was succeeded in office by Mr. Marsland, the present Prosecuting Attorney, and the prosecution did not move to implement the understanding.[1]

---

[1] Mr. Nakagawa outlined his position on the scope of the plea bargain in a letter to his successor in office where he stated in part:

Prior to the indictment being returned in the above-entitled matter Mr. Archibald Kaolulo and myself met with Mr. Moon at Mr. Moon's request to discuss the possibility of resolving all of Robert Yoon's cases that were pending against him. We did reach an agreement at that time and pursuant to said agreement Mr. Yoon entered pleas of guilty to seven counts of Theft in the First Degree and one count of Possession of a Firearm by a Person Convicted of Certain Crimes.

On November 18, 1980 the indictment in the above-entitled matter was returned charging Mr. Yoon with two counts of Promoting a Dangerous Drug in the Second Degree which allegedly took place in April of last year. Subsequent to the indictment being returned, Mr. Moon requested another meeting which took place sometime in late November or early December, 1980 between Ms. Lydia Garcia, Mr. Moon and myself. Mr. Moon explained that it was defendant's intent to resolve all of the pending cases against him at the time the initial agreement was reached and that it was not fair for the defendant to be facing two more charges

The defendant moved to dismiss the indictment on May 1, 1981, averring the offenses set forth were covered by the arrangement whereby he was imprisoned and the plea bargain should therefore be enforced. The motion was heard on May 27, 1981, and evidence on the content of the agreement was presented through testimony adduced from the members of the prosecution team who had negotiated it on behalf of the State, the former Prosecuting Attorney and his Acting First Deputy. The incumbent Prosecuting Attorney was also called to testify on procedures employed in his administration with respect to the processing of cases and plea bargaining.

The circuit court thereafter found the State was bound by the plea agreement, and the indictment was dismissed by an order entered on June 22, 1981.

II.

The issue before us concerns the breadth of a plea bargain struck between the State and the defendant through counsel. "For decades . . . [plea bargaining] was a *sub rosa* process

---

which allegedly took place in the month of April, 1980. Inasmuch as these charges would have been resolved had we been aware of their existence at the time the initial agreement was reached, I concurred with Mr. Moon's position. I indicated to Mr. Moon that we would take no action on both counts in Criminal Number 54971 and requested that Ms. Garcia take care of the matter.

Mr. Marsland's response, in essence, was that the offenses charged by the indictment fell beyond the scope of the plea agreement, his letter to Mr. Nakagawa stating in part:

In effect, what this agreement appears to effect is our dropping of criminal charges of a Class B nature and getting absolutely nothing in return. It is hard for me to conceive that this could be construed as an agreement in the interest of justice. As of this time we recognize that we are bound in terms of the cases that were initially plea bargained; however, it is our position that Criminal No. 54971 falls outside of the scope of that plea agreement. We therefore have no intention of dismissing these charges unless and until it can be proven to us that we are legally obligated to do so. Suppose murder charges, rather than the subject drug offenses had surfaced. Would the murder indictment have been incorporated in the arrangement between yourself and Mr. Moon? Our answer is an emphatic "no".

Mr. Marsland closed the letter with these statements:

Frankly, we feel that bargaining a Class A felony for a couple of Class C offenses—with no extended term—was giving away the store. Trying to give away two Class B felonies as part of the bargain is unconscionable.

shrouded in secrecy and deliberately concealed by participating defendants, defense lawyers, prosecutors, and even judges." *Blackledge v. Allison,* 431 U.S. 63, 76 (1977) (footnote omitted). The practice emerged from the shadows and became a visible and accepted component of the criminal justice system when it was legitimated by the United States Supreme Court in *Santobello v. New York,* 404 U.S. 257 (1971).

The petitioner in *Santobello,* not unlike Robert Yoon, had "'bargained' and negotiated for a particular plea in order to secure dismissal of more serious charges, but also on condition that no sentence recommendation would be made by the prosecutor." *Id.* at 262. He withdrew prior not-guilty pleas to two felony counts and pleaded guilty to a lesser-included offense. When he appeared for sentencing later, another prosecutor, who apparently was not informed of his colleague's commitment to make no recommendation regarding sentence, recommended the imposition of the maximum one-year sentence prescribed for the offense to which the petitioner had pleaded. Though petitioner objected and unsuccessfully sought to withdraw his guilty plea, he was sentenced to the maximum term. The judgment of conviction was vacated and the case was remanded to the state court for reconsideration in the light of the concerns expressed in the Supreme Court's opinion.

The Court deemed the "disposition of criminal charges by agreement between the prosecutor and the accused . . . an essential component of the administration of justice" and "[p]roperly administered, . . . [a practice] to be encouraged." *Id.* at 260. For it recognized that "[i]f every criminal charge were subjected to a full-scale trial, the States and the Federal Government would need to multiply by many times the number of judges and court facilities." *Id.* Plea bargaining was further characterized as a desirable part of the criminal justice system because the practice

> leads to prompt and largely final disposition of most criminal cases; it avoids much of the corrosive impact of enforced idleness during pretrial confinement for those who are denied release pending trial; it protects the public from those accused persons who are prone to continue criminal conduct even while on pretrial release; and, by shortening the time between charge and disposition, it

enhances whatever may be the rehabilitative prospects of the guilty when they are ultimately imprisoned. See *Brady v. United States,* 397 U.S. 742, 751-752 (1970).

*Id.* at 261. And the Court's holding was couched in the following terms:

This phase of the process of criminal justice, and the adjudicative element inherent in accepting a plea of guilty, must be attended by safeguards to insure the defendant what is reasonably due in the circumstances. Those circumstances will vary, but a constant factor is that when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled.

*Id.* at 262. Thus, if Robert Yoon's guilty pleas to the seven counts of Theft and the firearm offense entered on October 22, 1980 rested in any significant degree on a promised resolution of all the cases then pending against him, due process would indeed call for a fulfillment of the State's end of the bargain. *Bordenkircher v. Hayes,* 434 U.S. 357, 362 (1978); *Santobello v. New York,* 404 U.S. at 262; *State v. Waiau,* 60 Haw. 93, 96-97, 588 P.2d 412, 414-15 (1978); *State v. Gumienny,* 58 Haw. 304, 308, 568 P.2d 1194, 1197-98 (1977).

### III.

#### A.

Implicit in the circuit court's ruling is a finding that the guilty pleas entered in writing on October 22, 1980 were induced or influenced in some degree by the prosecutor's agreement that the pleas would dispose of all the cases then pending against the defendant. That there was a reasonable basis for Robert Yoon to believe the State had given its word in this regard is substantiated by the record.[2] In fact, the State does

---

[2] The transcript of the hearing on the motion to dismiss the indictment contains the following testimony elicited from Mr. Kaolulo, the Acting First Deputy Prosecuting

not seriously challenge the defendant's assertions about his understanding on the agreed resolution of all the pending cases. It nevertheless maintains the circuit court erred in dismissing the subsequent indictment on the strength of the plea arrangement.

The State's primary thesis is structured on basic contract law. It notes the written pleas filed on October 22nd only reflect a promise to "nolle pros" a charge of Robbery in the First Degree and asserts there were no "cases" then pending against Robert Yoon other than those disposed of by way of the guilty pleas and the nolle prosequi entered on that day. The argument is capped by claims that "consideration" to support the dismissal of the two drug charges was lacking and the prosecutor's promise to dismiss them was therefore unenforceable.

To be sure, "[c]ourts have frequently looked to contract law analogies in determining the rights of defendants aggrieved in the plea negotiation process. *See Cooper v. United States*, 594 F.2d 12, 15-16 (4th Cir. 1979); Westen & Westin, *A Constitutional Law of Remedies for Broken Plea Bargains*, 66 Cal. L. Rev. 471, 530 (1978)." *United States v. Calabrese*, 645 F.2d 1379, 1390 (10th Cir. 1981); *see, e.g., United States v. Krasn*, 614 F.2d 1229 (9th Cir. 1980); *Cooper v. United States, supra; Jones v. Estelle*, 584 F.2d 687 (5th Cir. 1978). Yet, "[w]hile [such] analogies . . . are important to the determination of questions regarding the effects of a plea bargain, . . . [they] are not solely determinative of the question." *State v. Rivest*, 106 Wis. 2d 406, 413, 316 N.W.2d 395, 399 (1982).

---

Attorney, on the examination of defense counsel:

Q. Do you recall in that month [October], 1980, a meeting between you and I and Mr. Nakagawa?

A. Yes, I do.

Q. This was to discuss cases involving Mr. Yoon?

A. Yes.

Q. And you recall what the intent at that time of the parties were in discussing Mr. Yoon's cases?

A. I remember you came in to make a proposal as far as a plea bargain between the state and the defendant. And it was my understanding that you wanted to dispose of all of the cases involving the defendant at that time.

The foregoing understanding was reiterated by Mr. Nakagawa in his testimony, as well as in his letter to Mr. Marsland. *See* note 1 *supra.*

An unfulfilled plea agreement, we are taught, implicates other considerations of constitutional dimension. For one, the acceptance of a plea by a court following plea bargaining "presuppose[s] fairness in securing agreement." *Santobello v. New York,* 404 U.S. at 261. And, "it is also clear that a prosecutor's [broken] promise may deprive a guilty plea of the 'character of a voluntary act.'" *Id.* at 266 (Douglas, J., concurring) (quoting *Machibroda v. United States,* 368 U.S. 487, 493 (1962)) (citation omitted).

### B.

Here, as the State observes, the written guilty pleas filed on October 22, 1980 did not mention the drug offenses described in the police report received by the Prosecuting Attorney's Office on October 10, 1980. The pleas submitted by the defendant only referred to the prosecutor's agreement to "nolle pros" a robbery charge. Since the investigative report was received by the office before the entry of the guilty pleas, knowledge of the drug offenses and an intent not to include them in the agreement are imputable to the Prosecuting Attorney. However, he expressly disaffirmed any prior awareness and further testified the object of the plea bargaining between himself and defense counsel was "to clear . . . [defendant's] record." The bargaining prosecutor's view of the agreement's scope is reflected in this excerpt from the transcript of the hearing on the motion to dismiss the indictment:

> On my part I have to keep the bargain that I made with Mr. Moon by clearing all his [defendant's] cases. If those two cases had been known to me, I would have cleared them the same way.

Given these circumstances, we have no grounds to set aside the circuit court's finding that the crimes charged by the indictment were covered by the earlier plea bargain.

Our review here is circumscribed by the nature of the proceedings. A dispute over the meaning of a plea agreement involves questions of fact, *United States v. Krasn,* 614 F.2d at 1233, and an appellate court's examination of factual determinations rendered below is governed by the "clearly erroneous" standard. *Hall v. Maggio,* 697 F.2d 641, 643 (5th Cir. 1983);

*United States v. Brooklier,* 685 F.2d 1208, 1215 (9th Cir. 1982). "We are not permitted, under that standard, to simply displace the . . . [circuit court's] findings for our own." *United States v. Minnesota Mining & Manufacturing Co.,* 551 F.2d 1106, 1109 (8th Cir. 1977). For such findings are not to be disturbed unless, after a review of the whole record, we are "left with the definite and firm conviction that a mistake has been committed." *Kim v. State,* 62 Haw. 483, 493, 616 P.2d 1376, 1382 (1980) (quoting *United States v. United States Gypsum Co.,* 333 U.S. 364, 395 (1948) ); *accord Honda v. Higa,* 52 Haw. 311, 313, 474 P.2d 708, 710 (1970); *Frey v. Goebert,* 52 Haw. 308, 310, 474 P.2d 537, 538 (1970).

A review of the record in this case does not leave us with a definite and firm conviction that a mistake has been committed. On the contrary, we think the circumstances recounted therein lend ample support to the circuit court's determination that the State should be held to the agreement to clear the defendant's record. Anything less might have raised questions concerning fairness in the State's dealings with Robert Yoon and the voluntariness of his guilty pleas. *Santobello v. New York, supra.*

Affirmed.

*Shirley Smith,* Deputy Prosecuting Attorney, on the briefs for plaintiff-appellant.

*Arthur K. Trask, Jr.,* Deputy Public Defender, on the brief for defendant-appellee.