STATE OF HAWAII, Plaintiff-Appellant, *v.* RADFORD JOHN RAMONES, aka Ramsey, Ram and Rad, Defendant-Appellee, and LANCE K. KEOHO and VICTORINO RAMOS, Defendants

NO. 11911

(CRIMINAL NO. 85-1105)

OCTOBER 20, 1987

LUM, C.J., NAKAMURA, PADGETT, HAYASHI, AND WAKATSUKI, JJ.

OPINION OF THE COURT BY HAYASHI, J.

Plaintiff-Appellant State of Hawaii (hereinafter "State") appeals the Findings of Fact, Conclusions of Law and Order Granting Motion to Suppress Statement of Defendant-Appellee Radford John Ramones (hereinafter "Ramones"). Ramones had waived his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966) (hereinafter "*Miranda* rights"), to give a statement about a suspected automobile theft under Hawaii Revised Statutes (hereinafter "HRS") § 708-831(1) (b) (1985). Ramones, though, was later charged with the Unauthorized Control of a Propelled Vehicle pursuant to HRS § 708-836 (1985), instead, based on his statement. The trial court had suppressed the statement ruling that, although Ramones had waived his *Miranda* rights as to an automobile theft charge, no valid waiver as to the Unauthorized Control of a Propelled Vehicle charge had occurred. State contends that the trial court erred because 1) the effectiveness of Ramones's waiver of his *Miranda* rights was not dependent on the nature of the charges against him at the time of interrogation; and 2) his waiver of *Miranda* rights as to the theft charge did not become stale such that rewarnings before questioning on the other offense were required. We agree in part with State and accordingly reverse the suppression order, declare the disputed statement admissible, and remand the case for trial.

I.

*BACKGROUND FACTS.*

The major facts are not controverted. On the evening of Oc-

tober 17, 1984 in Waikiki, two Honolulu Police Department (hereinafter "HPD") officers noticed a beige Toyota sedan, with County of Kauai license plates, carrying four local youths. Suspecting the car was a rental vehicle normally used only by tourists and was therefore stolen, the two officers stopped the Toyota sedan driven by Ramones,[1] detained the four youths, contacted the HPD dispatch to determine if the car was stolen, but eventually released the youths after the HPD dispatch failed to return a response. Later, however, the HPD dispatch communicated that the car had been reported stolen from Dollar Rent A Car of Hawaii. Sometime afterwards, two of the Toyota sedan's passengers were questioned by other HPD officers and revealed that Ramones would be surfing on Oahu's North Shore the next morning.

On October 18, 1984, Wahiawa HPD officers were assigned to watch the popular surfing areas for Ramones and the stolen car. Ramones was later observed entering the Toyota sedan whereupon he was arrested and transported to the Wahiawa HPD station. There, he was interviewed by HPD Detective Ray Kajiue (hereinafter "Det. Kajiue") about an "auto theft." Det. Kajiue explained the applicable constitutional rights and the HPD Form 81 waiver of rights document. The HPD Form 81 listed the nature of the charge as "auto theft" because, as Det. Kajiue later stated, the police did not know what specific crime Ramones had committed, so the broader offense of auto theft (as opposed to the more narrow act of the Unauthorized Control of a Propelled Vehicle) was alleged. Ramones then 1) signed the HPD Form 81 to waive his *Miranda* rights; 2) admitted he had driven the car the night before; 3) denied any stealing; and 4) asserted that his friend Defendant Lance K. Keoho (hereinafter "Keoho"), who had "influence" with Dollar Rent A Car of Hawaii and had previously borrowed vehicles for personal use, had lent him (Ramones) the car.[2] Ramones was re-

---

[1] The three passengers were Paul Klyn, Chris Johnson, and Walter Haas. They were not charged with any of the crimes involving Ramones.

[2] Keoho and Defendant Victorino Ramos (hereinafter "Ramos") were also indicted with Ramones for violating HRS § 708-836. The trial court dismissed the indictment without prejudice against Keoho on June 24, 1986 because State had not brought him to trial within six months of the indictment as required by Hawaii Rules of Penal Procedure Rule 48(b). The trial court had also, on January 27, 1986, granted State's motion to nolle prosecui the charge against Ramos for insufficient evidence. Keoho and Ramos are not parties to this appeal.

leased after the interrogation ended.

On September 4, 1985, Ramones was indicted for the Unauthorized Control of a Propelled Vehicle.[3] Ramones, however, was not arrested until July 6, 1986. Because of his indigency, Ramones received appointed counsel.

On October 14, 1986, Ramones moved to suppress the incriminating statement asserting that 1) he had not validly waived his *Miranda* rights because he did not know the true nature of the charges against him during the interrogation; and 2) had he realized that he might be prosecuted for the Unauthorized Control of a Propelled Vehicle, he would not have spoken. State replied that 1) Ramones was not confused plus gave a valid waiver; and 2) no misleading questioning or deception about the nature of the charge had occurred.

After conducting a hearing on the motion to suppress, the trial court on November 5, 1986 found, *inter alia*, that:

5. A material fact which significantly entered into the Defendant Ramones decision to make a statement was the fact of the charges against him, auto theft.

6. At no time during the questioning was the offense of Unauthorized Control of a Propelled Vehicle (contrary to

---

[3] HRS § 708-836 reads:

*Unauthorized control of propelled vehicle.* (1) A person commits the offense of unauthorized control of a propelled vehicle if he intentionally exerts unauthorized control over another's propelled vehicle by operating the vehicle without the owner's consent or by changing the identity of the vehicle without the owner's consent.

(2) "Propelled vehicle" means an automobile, airplane, motorcycle, motorboat, or other motor-propelled vehicle.

(3) It is an affirmative defense to a prosecution under this section that the defendant reasonably believed that the owner would have authorized the use had he known of it.

(4) Unauthorized control of a propelled vehicle is a class C felony.

By contrast, HRS § 708-831 provides in relevant part:

*Theft in the first degree.* (1) A person commits the offense of theft in the first degree if he commits theft:

. . . .

(b) Of property or services the value of which exceeds $200;

. . . .

(2) Theft in the first degree is a class C felony.

H.R.S. Section 708-836) mentioned by any of the questioners or by the defendant.

7. The statements made by the Defendant Ramones tended to exculpate him from the charge of auto theft.

8. The statements made by Defendant Ramones tended to inculpate him on the offense of Unauthorized Control of a Propelled Vehicle.

9. The Defendant justifiably believed the charge against him to be Auto Theft. *His decision to cooperate with authorities by answering their questions was based in important part, on his confidence in his ability to explain to the authorities that he had not stolen the car. Under these circumstances, his waiver of his constitutional right to remain silent was not a voluntary decision made knowingly and intelligently.*

Record at 155-56 (emphasis added).

The trial court next suppressed the statement by concluding that:

2. In the case at bar although the defendant was advised of his right to remain silent and his right to counsel with respect to a charge of Auto Theft *he made no knowing, intentional, voluntary waiver of such rights with respect to the charge of Unauthorized Control of a Propelled Vehicle which he now faces.*

*Id.* at 156 (emphasis added).

State then appealed pursuant to HRS § 641-13(7) (1985).

II.

## QUESTIONS PRESENTED.

We will address the issues posed in the following order:

1. Whether the trial court erred by suppressing Ramones's statement based on the conclusion that the effectiveness of his *Miranda* rights waiver depended on the nature of the charges against him at the time of interrogation? YES.

2. Whether it was unnecessary to rewarn Ramones where the interrogating police officer had already obtained a valid waiver of *Miranda* rights? YES.

## III.

### THE EFFECTIVENESS OF RAMONES'S WAIVER OF HIS MIRANDA RIGHTS.

State maintains that the validity of Ramones's waiver of his *Miranda* rights is not dependent on the nature of the charges against him so long as he possesses a full understanding of his constitutional rights. Ramones, while conceding that no police deception or coercion had happened,[4] counters that he did not effectively waive his *Miranda* rights where he was not informed about the true charges against him.

We begin with the principle that:

> It is well settled that before statements stemming from custodial interrogation may be offered against a criminal defendant at trial, the State must demonstrate that law enforcement officials gave certain warnings and followed specific procedures effective to secure the privilege against self-incrimination guaranteed by both the Fifth Amendment of the United States Constitution and by article I, section 8 of our State constitution. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); in accord: *State v. Paahana*, 66 Haw. 500, 502, 666 P.2d 592, 595 (1983); *State v. Melemai*, 64 Haw. 479, 643 P.2d 541 (1982). If this is not done prior to or in the course of any subsequent interrogation, any statement made by a person in custody cannot be admitted against him at trial. *Michigan v. Mosely*, 423 U.S. 96, 99-100, 96 S.Ct. 321, 324, 46 L.Ed.2d 313 (1975); *State v. Santiago*, 53 Haw. 254, 266, 492 P.2d 657, 664 (1971).

*State v. Uganiza*, 68 Haw. ____, ____, 702 P.2d 1352, 1354 (1985) (footnote omitted).

No dispute exists that Det. Kajiue adhered to the procedural safeguards and correctly warned Ramones of the right to remain silent, that any statement made could be used against him, the right

---

[4] At oral argument on appeal, counsel for Ramones emphasized that no accusation of police misconduct had been made. Nor was there a challenge to the sufficiency of the *Miranda* rights warning in general. Defense counsel argued solely that Ramones should have been told of the possible indictment for violating HRS § 708-836.

to counsel, and the right to have an attorney present during interrogation. *State v. Ikaika*, 67 Haw. 563, 698 P.2d 281 (1985); *State v. Russo*, 67 Haw. 126, 681 P.2d 553 (1984), *appeal after remand*, 69 Haw. ___, 734 P.2d 156 (1987); *see* note 4, *supra*. The critical question is thus whether *Miranda* warnings also require the police to apprise criminal suspects of the specific offense which they might be charged with. In other words, is Ramones's waiver of *Miranda* rights any less effective if he is charged with a different offense after the interrogation? We conclude that the trial court mistakenly reasoned that a waiver of *Miranda* rights cannot be effective if the defendant is charged with a different offense than the one he is interrogated for.

We agree with the United States Supreme Court's recent decision of *Colorado v. Spring*, 479 U.S. ___, 107 S. Ct. 851, 93 L. Ed. 2d 954 (1987), that a suspect's awareness of all the possible subjects of the police questioning is not relevant to determine whether the suspect voluntarily, knowingly, and intelligently waived his *Miranda* rights. In *Colorado*, federal agents arrested the defendant in Missouri for selling stolen weapons, administered the *Miranda* rights warnings, obtained a written waiver of *Miranda* rights, and then interrogated him about a Colorado murder (although defendant had not been told this earlier) plus the weapons charge. The defendant denied involvement in the murder although admitting shooting another person. But in a later interview with Colorado police, the defendant was again given his *Miranda* rights, waived those rights, and confessed complicity in the murder. *Id.* at ___, 107 S. Ct. at 853-54, 93 L. Ed. 2d at 961-62. The United States Supreme Court ruled the waiver valid:

> There is no doubt that Spring's decision to waive his Fifth Amendment privilege was voluntary. He alleges no "coercion of a confession by physical violence or other deliberate means calculated to break [his] will," *Oregon v. Elstad*, 470 U.S. 298, 312, 105 S.Ct. 1285, 1295, 84 L.Ed.2d 222 (1985), and the trial court found none. *His allegation that the police failed to supply him with certain information does not relate to any of the traditional indicia of coercion*: "the duration and conditions of detention . . ., the manifest attitude of the police toward him, his physical and mental state, the diverse pressures which sap or sustain his powers of resistance and self-control." *Columbe v. Connecticut*, 367 U.S.

568, 602, 81 S.Ct. 1860, 1879, 6 L.Ed.2d 1037 (1961) (opinion of Frankfurter, J.). Absent evidence that Spring's "will [was] overborne and his capacity for self-determination critically impaired" because of coercive police conduct, *ibid.*; *see Colorado v. Connelly*, 479 U.S. ____, ____, 107 S.Ct. 515, ____, 93 L.Ed.2d 473 (1986), his waiver of his Fifth Amendment privilege was voluntary under this Court's decision in *Miranda*.

There also is no doubt that Spring's waiver of his Fifth Amendment privilege was knowingly and intelligently made: that is, that Spring understood that he had the right to remain silent and that anything he said could be used as evidence against him. *The Constitution does not require that a criminal suspect know and understand every possible consequence of a waiver of the Fifth Amendment privilege. Moran v. Burbine, supra*, 475 U.S., at ____, 106 S.Ct., at 1135, 89 L.Ed.2d 410; *Oregon v. Elstad, supra*, at 316-317, 105 S.Ct, at 1298, 84 L.Ed.2d 222.
*Id.* at ____, 107 S. Ct. at 857, 93 L. Ed. 2d at 965-66 (emphasis added). "The constitutional privilege against self-incrimination protects the individual from being forced to" produce inculpatory evidence, *State v. Narvaez*, 68 Haw. ____, ____, 722 P.2d 1036, 1039 (1986), but affords no aegis against the consequences of the individual's foolish failure to apprehend all the effects of a valid waiver of *Miranda* rights.

Ramones was arrested for auto theft but eventually charged with the Unauthorized Control of a Propelled Vehicle. The two offenses carry the same penalty and are closely related. *See* note 3, *supra*. *Miranda* warnings as to one offense provided sufficient notice as to potential criminal liability for the other offense. Furthermore, *Miranda* warnings specifically provide that "any statement" Ramones made may be used as evidence against him at trial. *Colorado*, 479 U.S. at ____, 107 S. Ct. at 858, 93 L. Ed. 2d at 967.[5]

---

[5] The United States Supreme Court also observed that:
We have held that a valid waiver does not require that an individual be informed of all information "useful" in making his decision or all information that "might . . . affec[t] his decision to confess." *Moran v. Burbine*, 475 U.S., at ____, 106 S.Ct., at 1142, 89 L.Ed.2d 410. "[W]e have never read the Constitution to require that the police supply a suspect with a flow of information to help him calibrate his self-interest in deciding whether to speak or stand by his rights." *Ibid.* Here, *the additional information could affect only the wisdom of a Miranda waiver, not its essentially voluntary and knowing nature.*

Here, where Ramones was adequately warned of his *Miranda* rights yet chose to waive them, no constitutional violation took place. The trial court should not have suppressed the statement which Ramones had freely made.

## IV.

### *REWARNING OF MIRANDA RIGHTS.*

State finally contends that Ramones is erroneously arguing that his waiver of *Miranda* rights turned "stale" and rewarnings were necessary when Det. Kajiue obtained a waiver as to one crime and commenced interrogation on another offense. Ramones responds that State's contention is a non-issue.

Ramones is correct. This is not a true staleness issue. The issue of rewarning is merely the flip side of the first issue: must arrestees be "Mirandized" for every single statutory offense possible? Once *Miranda* warnings are given, they need not be given again in the same interrogation even if other offenses materialize or become more appropriate. *Colorado*, 479 U.S. at ___, 107 S. Ct. at 858, 93 L. Ed. 2d at 967.

## V.

### *CONCLUSION.*

Because Ramones validly waived his *Miranda* rights to give the incriminating statement, the trial court incorrectly granted suppression. The order suppressing the statement is therefore reversed, and the case is remanded for trial. *See State v. Kuba*, 68 Haw. ___, 706 P.2d 1305 (1985); *State v. Wyatt*, 67 Haw. 293, 687 P.2d 544 (1984).

*G. Cher Foerster*, Deputy Prosecuting Attorney, for Plaintiff-Appellant.

*Ian A. MacDonald*, for Defendant-Appellee.

---

*Colorado*, 479 U.S. at ___, 107 S. Ct. at 859, 93 L. Ed. 2d at 967 (emphasis added and footnote omitted).