STATE OF HAWAII, Plaintiff-Appellant, *v.* KURT LANCE NELSON, Defendant-Appellee

NO. 11847

(CRIMINAL NO. 11847)

DECEMBER 30, 1987

LUM, C.J., NAKAMURA, PADGETT, HAYASHI, AND WAKATSUKI, JJ.

OPINION OF THE COURT BY NAKAMURA, J.

Finding that Kurt Lance Nelson invoked his right to counsel before being questioned by officers of the Honolulu Police Department on December 27, 1985 and concluding that he did not waive the right thereafter, the Circuit Court of the First Circuit suppressed statements and other evidence obtained from him through custodial interrogation without the presence of counsel on December 27, 1985, on December 30, 1985, and on January 17, 1986. The State of Hawaii appeals, averring the record manifests no invocation by the defendant of such right and, in fact, establishes a waiver on his part. Concluding from a review of the record that the circuit court did not err in finding Nelson "did invoke the right of counsel" and in ruling the State failed to meet its burden of showing an unequivocal waiver, we affirm the order suppressing the evidence.

## I.

The unchallenged findings of the trial judge indicate Officer Armand Mariboho was assigned on December 23, 1985 to investigate a series of harassing telephone calls received by two Honolulu ministers. By means of a "trap" placed on the line of one of the ministers, the telephone company detected a source of the calls. Thus on Christmas Day, Officer Mariboho called the number given him by the phone company and spoke to Nelson. After Nelson acknowledged he was responsible for the intercepted calls, the officer "obtained permission from Defendant to speak with him at his residence."

The Christmas day interrogation at the defendant's residence culminated in a signed statement in which the defendant admitted calling one of the ministers but denied the calls were of a threatening nature. But before the statement was obtained, Nelson was apprised orally of his privilege against self-incrimination and of his right to counsel while being questioned. He was also given a Honolulu Police Department Form 81 (HPD-81), a form setting forth an accused person's "Miranda" rights with spaces to be marked to denote a desire to have an attorney present or not. Nelson checked the space following "no" in response to the printed query "[d]o you want an attorney?" and signed the form before being questioned.

On December 27, 1985 Officer Mariboho, accompanied by Officer Edward Santos, returned to the defendant's home to question him about other harassing calls traced to his telephone by the phone company a day earlier. Nelson was given another HPD-81 to fill out and sign before being questioned. But this time, the defendant checked neither the space following "yes" nor the space after "no." He was questioned, nonetheless; and statements and other incriminating evidence, including a list of telephone numbers and pages torn from the "Churches" section of the "Oahu Yellow Pages" of the directory of local telephone numbers, were obtained from him.

The foregoing list of numbers and yellow pages were surrendered after a discussion of "temptation" and the officer's advice to Nelson "that ridding himself of the telephone lists would prevent him from succumbing." The suggestion came after the interrogation took on a religious tinge with a pointed query on whether the

defendant had "anything against God." Later, the officer drew the defendant into a discussion of religion and being born again, prayed with him, read from the Bible,[1] and performed what the trial judge characterized as an act of "exorcism" on the defendant.

But the quest for incriminating evidence from the defendant did not come to an end on December 27, 1985. Detective Walter Kawaa visited the defendant's residence on December 30, 1985 and tape-recorded a lengthy statement after reading the defendant his "Miranda" rights and having him execute another HPD-81. The statement contained references to the list of phone numbers and the yellow pages turned over to Officer Mariboho on December 27, 1985.

Detective Kawaa continued the pursuit of evidence from the defendant into the following year, although there were no further reports of the activity that made him the object of intensive investigation. The detective recorded yet another statement by the defendant on January 17, 1986 after going through the procedure of "Mirandizing" him and obtaining his signature on the standard form.

Nelson was charged thereafter with two counts of Terroristic Threatening and two counts of Harassment.[2] He moved to suppress all of the statements and other evidence obtained from him, alleging they were "the product[s] of custodial interrogation conducted in violation of [his] right against self-incrimination." The circuit court concluded after hearing the motion that the evidence secured by the police on December 27, 1985, December 30, 1985, and January 17, 1986 should be suppressed. Finding the defendant was not in custody when he acknowledged responsibility for the calls under investigation in his initial conversation with Officer

---

[1] A passage chosen by the officer for reading was Romans 10:9, which reads:

That if thou shalt confess with thy mouth the Lord Jesus, and shalt believe in thine heart that God hath raised him from the dead, thou shalt be saved.

[2] The offenses charged by the indictment stemmed from the calls traced to the defendant's telephone in the interim between the first and second interrogations. The indictment did not cover the calls that were being investigated on December 25th. The two ministers who were the objects of the harassing calls then under investigation were reluctant to press charges and told Nelson they forgave him.

Mariboho and the defendant "intelligently, knowingly, and voluntarily waived his right to counsel" before being interrogated at his residence on December 25, 1985, the court concluded the incriminating statements given to Officer Mariboho on Christmas Day were not excludable.

The statements and other evidence obtained on subsequent police visits to the defendant's residence were suppressed because the circuit court found "he was in the custody of law enforcement authorities [though] he was in his own home," he "did invoke his right to counsel" on December 27, 1985, and he "did not unequivocally waive his right." In the court's view, "[w]hen Defendant did not unequivocally waive his right . . . all further questioning should have ceased." "Once Officers Mariboho and Santos obtained statements from Defendant in contravention of his right to counsel," the court ruled, "statements that flow[ed] therefrom [could] not be used as evidence against Defendant [since they constituted] fruit of the prior taint and because the cat was out of the bag." That "Detective Kawaa did an admirable job of advising Defendant of his rights" did not save the evidence he obtained from suppression; for in the court's view, the "State did not establish that the [prior] taint was attenuated, nor did the State establish that the Statements of December 30, 1985 and January 17, 1986 were obtained through independent sources."

## II.

Appealing from the circuit court's order of suppression, the State argues the court clearly erred in finding the defendant invoked his right to counsel on December 27, 1985 when he did not complete the HPD-81 Officer Mariboho gave him to read and fill out. There was, it maintains, actually no reason to "Mirandize" the defendant again since the questioning conducted on December 27th was a continuation of the earlier interrogation for which there was an unequivocal waiver of counsel. It asserts the defendant was neither tricked nor coerced into giving statements and turning over other incriminating evidence and the court misapplied the "fruit of the poisonous tree" doctrine. We begin our analysis of the issues posed on appeal with a review of the "Miranda" rule.

## A.

The Fifth Amendment to the United States Constitution and article 1, section 10 of the Hawaii Constitution provide that "[n]o person shall . . . be compelled in any criminal case to be a witness against himself (oneself)." Deeming this privilege "fundamental to our system of constitutional rule[,]" *Miranda v. Arizona,* 384 U.S. 436, 468 (1966), and recognizing that the privilege is jeopardized "when an individual is taken into custody or otherwise deprived of his freedom by the authorities in any significant way and . . . subjected to questioning," *id.* at 478, the Supreme Court held that "[p]rocedural safeguards must be employed to protect the privilege[ ]" whenever interrogation in a custodial setting occurs. *Id.* at 478-79. The Court thus fashioned a rule requiring, in the absence of other fully effective means "to notify the person of his right of silence and to assure that the exercise of the right will be scrupulously honored," *id.* at 479, the following measures as safeguards:

> [The person] must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires. Opportunity to exercise these rights must be afforded to him throughout the interrogation. After such warnings have been given, and such opportunity afforded him, the individual may knowingly and intelligently waive these rights and agree to answer questions or make a statement.

*Id.* The Court's prescript was that "unless and until such warnings and waiver are demonstrated by the prosecution at trial, no evidence obtained as a result of [custodial] interrogation can be used against him." *Id.* (footnote omitted).

Citing *Johnson v. Zerbst,* 304 U.S. 458 (1938), the Court served notice too that its "high standards of proof for the waiver of constitutional rights" should be applied to any purported waiver of the right to have counsel present throughout the interrogation. 384 U.S. at 475. "Since the State is responsible for establishing the isolated circumstances under which the interrogation takes place

and has the only means of making available corroborated evidence of warnings given during incommunicado interrogation," the Court said, "the burden [of demonstrating waiver] is rightly on its shoulders." *Id.* " 'The record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything less is not waiver.' " *Id.* (quoting *Carnley v. Cochran,* 369 U.S. 506, 516 (1962) ).

B.

Turning from the Fifth Amendment privilege to that embodied in article I, section 10 of the Hawaii Constitution, we note this court initially considered "the scope of the protections guaranteed by [the] Hawaii Constitution's privilege against self-incrimination[ ]" in *State v. Santiago,* 53 Haw. 254, 265, 492 P.2d 657, 664 (1971). There, the court held "the protections which the United States Supreme Court enumerated in *Miranda* have an independent source in the Hawaii Constitution's privilege against self-incrimination." *Id.* at 266, 492 P.2d at 664. The measures adopted to ensure that the exercise of the constitutional privilege would be scrupulously honored were essentially those delineated in *Miranda.* Since the question was the admissibility of statements made during custodial interrogation, the court said

that before reference is made at trial to statements made by the accused during custodial interrogation, the prosecutor must first demonstrate that certain safeguards were taken before the accused was questioned. Unless other equally effective protections are developed, the prosecutor must show that each accused was warned that he had a right to remain silent, that anything said could be used against him, that he had a right to the presence of an attorney, and that if he could not afford an attorney one would be appointed for him.

*Id.* The court's further mandate was "that unless these protective measures are taken, statements made by the accused may not be used either as direct evidence in the prosecutor's case in chief or to

impeach the defendant's credibility during rebuttal or cross-examination."[3] *Id.*

The Hawaii rule is broader in scope than the federal rule. "In *Harris v. New York,* 401 U.S. 222 (1971), the United States Supreme Court, in a five to four decision, held that statements inadmissible under *Miranda* could nevertheless be used to impeach the testimony of a defendant who took the stand." *State v. Santiago,* 53 Haw. at 263, 492 P.2d at 662. But as "the final arbiter of the meaning of the provisions of the Hawaii Constitution[,]" *id.* at 265, 492 P.2d at 664, this court chose not to sanction a conviction possibly premised on evidence "procured [from the defendant] in violation of his constitutional rights[.]" *Id.* at 267, 492 P.2d at 665.

## III.

The State does not dispute that the excluded evidence was procured from Nelson through custodial interrogation and the constraints of the "Miranda" rule applied when he was questioned at his residence.[4] But it urges a reversal of the circuit court's ruling on grounds that the court erred in finding the defendant invoked his right to counsel on December 27, 1985 and "[a]n objective review of the evidence should lead this [c]ourt to [a] conclusion[ ] that Defendant . . . waive[d] his right to counsel." We cannot agree.

## A.

When a motion to suppress evidence is heard, "[i]t is for the trial [court] as factfinder to assess credibility of witnesses, including defendants, and to resolve all questions of fact[.]" *Lono v. State,* 63

---

[3] Though the court expressly assigned to the prosecutor the burden of showing the accused was adequately apprised of his right to remain silent and his right to have counsel present at interrogation, it did not discuss the waiver of these rights. But our standards with respect to the waiver of constitutional rights are the same high standards set by the Supreme Court. Specifically, "[t]he right to counsel is waivable when it is voluntarily and intelligently undertaken. *Johnson v. Zerbst,* 304 U.S. 458 (1938)." *State v. Dicks,* 57 Haw. 46, 48, 549 P.2d 727, 729 (1976).

[4] Apparently, the interrogation was conducted at the defendant's residence because he allegedly suffers from a psychiatric condition, agoraphobia, and is reluctant to venture beyond the confines of his home.

Haw. 470, 473, 629 P.2d 630, 633 (1981) (citing *State v. Hopkins,* 60 Haw. 540, 592 P.2d 810 (1979) ). "The [court as] trier of fact may draw all reasonable and legitimate inferences and deductions from the evidence adduced . . . , and findings of the trial court will not be disturbed unless clearly erroneous." *Lono v. State,* 63 Haw. at 473-74, 629 P.2d at 633 (citing *State v. Herrera,* 63 Haw. 405, 629 P.2d 626 (1981) ). Whether the defendant invoked his right to counsel and whether he waived the right are primarily questions of fact. Thus, we would not disturb the trial court's determination of these questions "unless, after a review of the whole record, we are 'left with the definite and firm conviction that a mistake has been committed.' *Kim v. State,* 62 Haw. 483, 493, 616 P.2d 1376, 1382 (1980) (quoting *United States v. United States Gypsum Co.,* 333 U.S. 364, 395 (1948) ); *accord Honda v. Higa,* 52 Haw. 311, 313, 474 P.2d 708, 710 (1970); *Frey v. Goebert,* 52 Haw. 308, 310, 474 P.2d 537, 538 (1970)." *State v. Yoon,* 66 Haw. 342, 350, 662 P.2d 1112, 1117 (1983).

The evidence in the record on whether or not Nelson invoked his right to counsel on December 27, 1985 is conflicting. Officer Mariboho did not recall that the defendant sought the assistance of counsel; the defendant said he did, but the request was disdainfully brushed aside with intimidating remarks.[5] And on the first HPD-81 he signed that day, the defendant did not indicate whether his response to the query "[d]o you want an attorney now?" was "yes" or "no." The trial court resolved the conflict in Nelson's favor. We are not left with a definite and firm conviction after reading the record that the trial court erred in finding there was a request.

We also are convinced from the review that the circuit court did not err in concluding the State failed to sustain its burden of demonstrating a voluntary and intelligent waiver of counsel. True, the defendant indicated he did not "want an attorney" on two

---

[5] In relevant part, the defendant's testimony at the hearing on his motion to suppress evidence reads:

And when I said I wanted to speak to an attorney, that's when he sort of barked back that, "[s]crew you. We got enough evidence to hang you with right now." And I was in obviously a very upset state. And so I — I felt intimidated, and I signed whatever he wanted me to sign at the time. And just prior to signing it, he said, "[i]t just will make matters messier if— if you bring an attorney into it. It would be too expensive. You can't afford it anyway." And after that, I signed everything he wanted me to sign.

forms he signed later on December 27, 1985 and on forms he signed on December 30, 1985 and January 17, 1986. Yet the circumstances surrounding their execution leave room for doubt that Nelson " 'was offered counsel but intelligently and understandingly rejected the offer[ ]' " on the days in question. *Miranda v. Arizona,* 384 U.S. at 475 (quoting *Carnley v. Cochran,* 369 U.S. at 516).

The record reveals the defendant signed a HPD-81 at Officer Mariboho's behest before being interrogated on December 27th. But on the crucial inquiry therein, he demurred. The trial court deemed this corroborative of the claim that he sought the assistance of counsel but was rudely rebuffed. When Officer Mariboho completed his interrogation, the defendant was questioned by Officer Santos. Before questioning the defendant, Officer Santos had him sign two HPD-81s on which Nelson indicated he did not "want an attorney now."[6] However, this occurred shortly after he signified a reluctance to waive the right to have counsel present.[7] Like the trial court, we doubt that the purported waiver represented an unequivocal rejection of an offer of counsel.

Upon the completion of Officer Santos' interrogation, Officer Mariboho "talked [to Nelson] about the Lord" and read him passages from the Bible. The passages selected for reading carried messages that "confession brings salvation,"[8] "confession can save one from the wrath of God," and "God could deliver one from his persecutors." The officer also gave the defendant a copy of the Bible with passages "highlighted" and had the defendant join him in prayer. In the trial court's view, "[d]espite what may have been the good intentions of Officer Mariboho, his use of the Bible — including passages relating to confession and salvation — prayer, and exorcism ma[d]e it difficult to determine where Mariboho the police officer end[ed] and Mariboho the savior be[gan]." And the court found "[t]he techniques employed by Officer Mariboho on an

---

[6] One HPD-81 witnessed by Officer Santos contained information that Nelson was to be questioned about "Telephone Harassment which occurred on 12-20-85." The other indicated he was to be questioned about "Terroristic Threatening 2°" which occurred on 12-20-85."

[7] The HPD-81 witnessed by Officer Mariboho was apparently signed by Nelson at 1:48 p.m. The two forms witnessed by Officer Santos were apparently signed by Nelson at 2:00 p.m.

[8] *See, e.g., supra* note 1.

individual with Defendant's obviously fragile state of mind had the effect of overbearing Defendant's will."

We cannot say the inferences and deductions drawn from the evidence by the trial court were unreasonable. Hence, we discern no basis for disturbing the trial court's finding that Nelson's will was overborne and its conclusion[9] that "[t]he State did not establish that the taint was attenuated" when statements were obtained later by Detective Kawaa, though on the forms executed on December 30, 1985 and January 17, 1986 the defendant indicated he did not "want an attorney now."

### B.

The State, however, argues in the alternative that it was not obligated to "re-Mirandize" Nelson at any time after December 25, 1985, when he unequivocally waived his right to have counsel present during interrogation, since any interrogation conducted thereafter was part of the same investigation. To be sure, we recently said "[o]nce *Miranda* warnings are given, they need not be given again in the same interrogation even if other offenses materialize or become more appropriate." *State v. Ramones*, 69 Haw. ___, ___, 744 P.2d 514, 518 (1987) (citation omitted). But we were speaking of a situation totally unlike the one at bar.

The HPD-81 presented to Radford John Ramones for signature before he was questioned without counsel on October 18, 1984 stated he was under investigation for "Auto Theft." On the basis of information gathered in the investigation Ramones was formally charged with a different offense, Unauthorized Control of a Propelled Vehicle. The trial court suppressed the statement despite the waiver of counsel in the HPD-81. The court reasoned there had been no effective waiver because the defendant "was not informed about the true charges against him." *Id.* at ___, 744 P.2d at 516. We vacated the order of suppression. "The two offenses carry the same penalty and are closely related[,]" we said, and the "*Miranda*

---

[9] We stated earlier that waiver was primarily a question of fact. But in a more technical sense, waiver is a question that requires " 'application of constitutional principles to the facts as found . . . .' " *Brewer v. Williams*, 430 U.S. 387, 403 (1977) (quoting *Brown v. Allen*, 344 U.S. 443, 507 (separate opinion of Frankfurter, J.) ).

warnings as to one offense provided sufficient notice as to potential criminal liability for the other offense." *Id.* at ____, 744 P.2d at 518.

Unlike Radford John Ramones, Kurt Lance Nelson was subjected to questioning more than once. He was initially questioned by Officer Mariboho on Christmas Day about harassing calls received by two ministers. Armed with information about threatening calls received by other persons uncovered by the telephone company in the interim, Mariboho returned two days later with another officer, and they subjected the defendant to further interrogation. This was hardly "the same interrogation" conducted on Christmas Day. The officers had new information regarding different offenses, and it was incumbent upon them to "Mirandize" the defendant again.

Since the statements and other evidence suppressed by the circuit court were procured from the defendant through custodial interrogation in violation of the protections guaranteed by the Hawaii Constitution's privilege against self-incrimination, we affirm the circuit court's order of suppression.[10]

*Ellen B. Politano,* Deputy Prosecuting Attorney, for appellant.

*Susan Barr (David J. Gierlach* with her on the brief), Deputy Public Defenders, for appellee.

---

[10] We do not find it necessary to discuss "the fruit of the poisonous tree" doctrine.