883 P.2d 686

**STATE of Hawai'i, Plaintiff–Appellee,**

**v.**

**Stanley S.L. KONG, Defendant–Appellant.**

**No. 16646.**

Intermediate Court of Appeals of Hawai'i.

Oct. 21, 1994.

Joyce K. Matsumori–Hoshijo, Deputy Public Defender, on the brief, Honolulu, for defendant-appellant.

Mark R. Simonds, Deputy Pros. Atty., County of Maui, on the brief, Wailuku, Maui, for plaintiff-appellee.

BURNS, C.J., and HEEN and WATANABE, JJ.

BURNS, Chief Judge.

Defendant Stanley Kong (Kong) appeals the circuit court's October 13, 1992 judgment convicting him of Burglary in the Second Degree (BSD), Hawai'i Revised Statutes (HRS) § 708–811 (1985), and the Unauthorized Control of a Propelled Vehicle (UCPV), HRS § 708–836 (1985). Kong's appeal attacks the October 8, 1992 order (October 8, 1992 Order) denying his August 12, 1992 Motion to Suppress Statements and for Vol-

untariness Hearing (August 12, 1992 Motion to Suppress).

Kong's August 12, 1992 Motion to Suppress was heard and orally denied on August 14, 1992. The trial commenced on August 17, 1992, and the jury rendered its verdict on August 19, 1992.

■ If an order granting a defendant's motion to suppress evidence is entered prior to trial, the State may appeal. HRS § 641–13(7) (Supp.1992). If the State does not appeal, the suppression order is interlocutory and the trial court retains jurisdiction to modify or reverse it until the trial court enters the final and appealable judgment. If the State appeals, the suppression order is stayed pending the outcome of the appeal. HRS § 641–13(7) (Supp.1992). If, as in Kong's case, the defendant's motion to suppress evidence is denied prior to trial, the case proceeds. In the absence of an order permitting an interlocutory appeal, HRS § 641–17 (1985), the time for the defendant to appeal begins to run when a final and appealable judgment of conviction is entered.

■ Kong did not object when the evidence the pretrial sought to suppress was introduced at trial. However, when a defendant's motion to suppress evidence is denied prior to trial, the defendant need not object at trial to the introduction of the evidence to preserve his or her right to appeal the pretrial denial of his or her motion to suppress and the introduction of the evidence at trial. *State v. Reese*, 61 Haw. 499, 605 P.2d 935 (1980); *State v. Nakachi*, 7 Haw.App. 28, 33 n. 6, 742 P.2d 388, 392 n. 6 (1987).

With respect to motions to suppress evidence recovered at police searches, Professor Wright says:

If a motion to suppress is denied, this becomes the law of the case and the illegality of the search cannot ordinarily be relitigated by objection to the evidence at the trial. But the preliminary denial cannot be binding in all circumstances. The ruling on the motion is an interlocutory one, and if new facts come to light at the trial, the court is free to reconsider the legality of the search on objection to the evidence. . . .

3 C. Wright, *Federal Practice and Procedure: Criminal 2d* § 676 (1982) (footnotes omitted).

■ In other words, when the defendant's pretrial motion to suppress is denied and the evidence is subsequently introduced at trial, the defendant's appeal of the denial of the motion to suppress is actually an appeal of the introduction of the evidence at trial. Consequently, when deciding an appeal of the pretrial denial of the defendant's motion to suppress, the appellate court considers both the record of the hearing on the motion to suppress and the record of the trial. *State v. Nakachi*, 7 Haw.App. 28, 33 n. 7, 742 P.2d 388, 392 n. 7 (1987); *State v. Uddipa*, 3 Haw.App. 415, 416–17, 651 P.2d 507, 509 (1982); *State v. Crowder*, 1 Haw. App. 60, 66–67, 613 P.2d 909, 914 (1980).

At the August 14, 1992 pretrial hearing on the motion to suppress, Maui Police Department Detective Joseph Higgins (Detective Higgins) testified in relevant substance as follows.

Suspecting Kong of having burglarized the Hawaiian Auto Body Shop, Detective Higgins met him on July 15, 1991 and asked him "if he would accompany me to the station in regards to the burglary that I was investigating. And he told me yeah, he'd like to—he wanted to go with me to clear the matter up." Detective Higgins drove Kong to the police station, escorted him into the CID office interrogation room, and showed him and read him his constitutional rights as follows:

Before we ask you any questions, you must understand your rights. You have the right to remain silent. Anything you say can be used against you in court. You have the right to talk to a lawyer for advice before we ask you any questions and to have him [or her] with you during questioning. If you cannot afford a lawyer one will be appointed for you before any questioning if you wish.

Kong then signed the following:

### WAIVER OF RIGHTS

I have read this statement of my rights and I understand what my rights are. I

am willing to make a statement and answer questions. No promises or threats have been made to me and no pressure or coercion of any kind has been used against me.

After signing the Waiver of Rights, Kong told Detective Higgins that

at no time did he break into Hawaiian Auto Body and Paint. And uh—that ah—the paint sprayers and sander and drill that he was selling, he knew it came from Hawaiian Auto Body and Paint, but he wasn't about to reveal who broke into the establishment and gave him the items.

Kong also told Detective Higgins

that he knew where some of the stolen stuff was and he was going to turn it over to me on the following day, which would be Tuesday, cause July 15 was a Monday.

When the interview was over, Detective Higgins gave his card to Kong and drove him to where he wanted to go.

Later that same day, at 3:30 p.m., Kong called Detective Higgins and told him to pick him up at Ka'ohu Store. When Detective Higgins arrived, Kong

directed [Detective Higgins] to drive to Makaala [Maka'ala] Place off of Waialae [Wai'alae]. As [they] turned into Makaala [Maka'ala] [Kong] told [Detective Higgins] to stop near some bush area. And [Kong] told [him] to stay here, wait.

[Kong] got out. [Kong] went to the bush then after few minutes, maybe two or three minutes, he came back with a package. And the package contained four spray guns and a cordless drill. Then [Kong] went across the road. He went into the bush again and he came back empty handed. He said Joe, the—the sander and grinder, I believe, that he had hid on the other side of the road, he said is not there now. Somebody else—somebody may have taken it.

On Saturday, August 10, 1991, Kong called Detective Higgins and told him

that he had some narcotic information that he wanted to give me and that I said—I told him well, fine. He wanted to meet with me, but I asked him what about the—the rest of the—the items from—from Ha-

waiian Auto Body and Paint, you said you were going to give it back to me.

He said—he told me that he would contact me the following week which would be between August 12 and 16, I believe. Sometime during the week he would give me a call back. I didn't—I didn't hear from him by Wednesday.

On Wednesday, August 14, 1991, Detective Higgins drove to the subdivision where Kong was staying and saw Kong "sitting on the porch on a railing." After Detective Higgins parked his car and as he exited it, Kong "walked up from where he was on the porch, he walked to [Detective Higgins] toward the back of his vehicle." Detective Higgins asked him "where's the—the sander and grinder you promised to give back to me." At the pretrial hearing, Detective Higgins described Kong's response as follows:

At that time, he told me Joe, you know the—the items I turned in to you, I gave you, and that sander and grinder that I lost, that was the only items I took from Hawaiian Auto Body and Paint. The other items stated by the complainant that he alleged[ly] took, he said I never took that stuff.

Then he continued on into how he had broken into the establishment, getting a bolt cutter from his Makaala [Maka'ala] Street address, cutting the bolt and going into the establishment and removing the paint cans, I mean the paint sprayers and loading it into a vehicle that was parked in there and drove off with the vehicle.

At trial, upon examination by the State, Detective Higgins described his August 14, 1991, meeting with Kong as follows:

Q. After you stopped your vehicle, what did he do, the defendant?

A. Well, where I parked I didn't see him for a few seconds. I got out of my vehicle, by the time I—to get around to approach Stanley, but by the time I got to the back of my vehicle, Stanley was approaching me.

Q. And as he came up to you, then what happened?

A. Well, I asked him I said, Stanley, where's the—the—the buffer and sander you said you was going to give me back, you know. And then he started to tell me that you know, Joe, that five items I gave you back earlier, that's the only items I took from Hawaiian Auto Body and Paint. He said the inventory list is exaggerated, that I didn't take all that stuff.

Then he just continued on going into detail that—that he had taken the bolt cutters from the Makaala [Maka'ala] Street address. Under the cover of darkness, he didn't remember the exact date, but under the cover of darkness, he went to Hawaiian Auto Body and Paint, went through the back, cut the bolt off of the padlock, he slid the door open, he went inside, loaded all the items. Well, he's saying only these five that I recovered. He loaded it into the vehicle that was parked within the establishment. The keys was [sic] in the vehicle and he took the vehicle, closed the door up, and left.

Q. Did he mention what he did with the vehicle after he was done with it?

A. Well, he said he—he drove around for awhile. He said, you know, he even went to fill gas and nobody even said anything. And as he was talking, he said oh, by the way, you know that fingerprints you said you got off the car? I said, yeah. He said that weren't my prints, because I was using gloves.

The circuit court's findings of fact (FOF) and conclusions of law (COL) entered on October 8, 1992 state in relevant part as follows:

### FINDINGS OF FACT

\* \* \* \* \* \*

9. On August 14, 1991, prior to any questioning by Detective Higgins, Defendant made incriminating statements to Detective Higgins;

### CONCLUSIONS OF LAW

1. Given the totality of the circumstances, the State of Hawaii [Hawai'i] has proven beyond a reasonable doubt that on July 15, 1991 and August 14, 1991, [Kong] voluntarily, intelligently and knowingly waived his rights pursuant to the decision in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) and he provided the police with a voluntary statements [sic][.]

\* \* \* \* \* \*

Kong challenges FOF No. 9 and COL No. 1 solely with respect to his August 14, 1991 incriminating statements.

Based on Detective Higgins' testimony, we conclude that FOF No. 9 is clearly erroneous.

COL No. 1 is right with respect to July 15, 1991 and wrong with respect to August 14, 1991. On July 15, 1991, Miranda warnings were given to Kong, and Kong waived his constitutional rights pertaining to the BSD/UCPV investigation. After Kong was custodially interrogated, he was released.

■ The August 14, 1991 questioning of Kong by Detective Higgins pertained to the same BSD/UCPV investigation. Moreover, it was custodial interrogation because Detective Higgins "interrogated" and "seized" Kong when he asked Kong, "Where's the—the sander and grinder you promised to give back to me." *State v. Blackshire*, 10 Haw. App. 123, 131–36, 861 P.2d 736, 741–43, *cert. denied* 74 Haw. 652, 863 P.2d 989 (1993). It was interrogation because Detective Higgins knew or should have known that his question was reasonably likely to elicit an incriminating response. *Id.* It was a seizure because the question was inquisitive, i.e., more intrusive and accusatory in nature, rather than general. *Id.*

The question is whether the Miranda warnings given to Kong on July 15, 1991 satisfied the constitutional requirement of giving Miranda warnings to him prior to his being custodially interrogated on August 14, 1991. Our answer is no.

■ Hawai'i precedent is not precisely on point. "Once Miranda warnings are given, they need not be given again in the same interrogation even if other offenses materialize or become more appropriate." *State v. Ramones*, 69 Haw. 398, 406, 744 P.2d 514, 518 (1987). If the interrogation is two days

later and involves new information regarding different offenses, a Miranda warning must be given again. *State v. Nelson,* 69 Haw. 461, 748 P.2d 365 (1987). In Kong's case, Kong was not in custody between the two custodial interrogations and the second custodial interrogation pertained to the same offenses but was twenty-nine days later.

California's rule is

that subsequent statements by a defendant without Miranda warnings are nonetheless admissible upon a judicial finding that a prior adequate warning was given 'within a reasonably contemporaneous period of time.'

*People v. Bennett,* 129 Cal.Rptr. 679, 684, 58 Cal.App.3d 230, 237 (1976) (citations omitted).

Professors LaFave and Israel state:

Assuming the warnings were given in a timely fashion, the question then may be whether they became "stale" after the passage of time. It is generally accepted that fresh warnings are not required after the passage of a few hours. Authority is also found to the effect that this is also true even after the passage of several days where the custody has been continuous, but the contrary view has much to commend it. Clearly the passage of weeks or months is too long.

1 W. LaFave & J. Israel, *Criminal Procedure* § 6.8 at 520 (1984) (footnotes omitted).

Clearly, the July 15, 1991 warning/waiver became stale prior to August 14, 1991, and a new Miranda warning was required before Detective Higgins could again custodially interrogate Kong about the BSD/UCPV offenses without denying his constitutional rights. Since no one gave Kong a Miranda warning within a reasonable time prior to his being custodially interrogated on August 14, 1991, the incriminating statements uttered by Kong during that custodial interrogation were inadmissible as evidence. *State v. Santiago,* 53 Haw. 254, 266, 492 P.2d 657, 664 (1971). Therefore, Kong's August 12, 1992 Motion to Suppress was erroneously denied.

Accordingly, we vacate: (1) the October 8, 1992 Order denying defendant Stanley Kong's August 12, 1992 Motion to Suppress;

and (2) the October 13, 1992 judgment convicting him of Burglary in the Second Degree, HRS § 708–811, and Unauthorized Control of a Propelled Vehicle, HRS § 708–836. We remand for further proceedings consistent with this opinion.