<span style="color:red">**Electronically Filed
Intermediate Court of Appeals
CAAP-23-0000743
30-JAN-2026
08:04 AM
Dkt. 95 SO**</span>

NO. CAAP-23-0000743

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

STATE OF HAWAIʻI, Plaintiff-Appellee, v.
SILBER M. JERCY, Defendant-Appellant

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CR. NO. 1CPC-22-0000352)

SUMMARY DISPOSITION ORDER
(By: Leonard, Presiding Judge, Hiraoka and Wadsworth, JJ.)

Defendant-Appellant Silber M. Jercy (**Jercy**) appeals from the November 21, 2023 Amended Judgment of Conviction and Sentence (**Amended Judgment**) entered by the Circuit Court of the First Circuit (**Circuit Court**).[1]  Jercy also challenges the Circuit Court's July 28, 2022 Findings of Fact, Conclusions of Law and Order Denying Defendant's Motion to Suppress Identification (**Order Denying Motion to Suppress**).[2]

Plaintiff-Appellee State of Hawaiʻi (**State**) charged Jercy with a single count of Assault in the Second Degree, in violation of Hawaii Revised Statutes (**HRS**) § 707-711(1)(m)

---

[1]    The Honorable Lesley N. Maloian presided.

[2]    The Honorable Rowena A. Somerville presided.

(Supp. 2021).[3] After a jury trial, Jercy was found guilty as charged. The Circuit Court sentenced Jercy to, *inter alia*, a four-year term of probation.

Jercy raises a single point of error on appeal, contending the Circuit Court erred in denying his June 14, 2022 Motion to Suppress Identification (**Motion to Suppress**), including error reflected in the findings of fact and conclusions of law.

Upon careful review of the record and the briefs submitted by the parties, and having given due consideration to the arguments advanced and the issues raised, we resolve Jercy's point of error as follows:

Jercy argues that the Circuit Court erred when it denied the Motion to Suppress, because even though the Circuit Court found that the police show-up where Jercy was identified by the complaining witness (**CW**) was impermissibly suggestive, it failed to examine the impact the impermissible show-up had on the reliability of the identification itself.

It is well-established that a defendant's due process rights may be violated if the procedure used to obtain an eyewitness identification is impermissibly suggestive. State v. Kaneaiakala, 145 Hawaiʻi 231, 240, 450 P.3d 761, 770 (2019). Whether an eyewitness identification may be admissible even if it

---

[3]     **§ 707-711  Assault in the second degree.** (1) A person commits the offense of assault in the second degree if the person:

        . . . .

        (m)   Intentionally or knowingly causes bodily injury to a person who is sixty years of age or older and the age of the injured person is known or reasonably should be known to the person causing the injury.

is obtained through an impermissibly suggestive procedure depends on the reliability of the identification.  Id.  In Kaneaiakala, the Hawai'i Supreme Court held that its prior framework for determining the admissibility of eyewitness identifications was insufficient and, prospectively, adopted new requirements for trial courts evaluating whether an eyewitness identification must be suppressed.  Id. at 241-47, 450 P.3d at 771-77.

The supreme court first pointed to thirteen factors that a trial court should consider including in jury instructions regarding how to assess the reliability of an eyewitness identification[4] and held that the judge must consider those same factors in addressing the admissibility of an eyewitness identification.  Id. at 242-47, 450 P.3d at 772-77.

In so doing, the supreme court also noted its prior holding that field show-up identifications are "inherently suggestive," and therefore require additional instructions regarding how the suggestiveness of show-up identifications may affect the reliability of the identification.  Id. at 243, 450 P.3d at 773 (citing State v. Cabinatan, 132 Hawai'i 63, 76, 319 P.3d 1071, 1084 (2014)).  These additional instructions regarding show-up identifications have been promulgated as HAWJIC 3.19A Show-Up Identification.[5]  The supreme court in Kaneaiakala stated

---

[4]     These thirteen factors have been adopted by Hawaii's Standard Committee on Pattern Jury Instructions in Hawai'i Standard Instruction (**HAWJIC**) 3.19 Eyewitness Testimony.

[5]     HAWJIC 3.19A, Show-Up Identification, reads as follows:

       In this case, in addition to other eyewitness identification testimony, you have received evidence that the defendant was identified by a witness at a so-called "show-up" conducted by the police.  While show-ups are permissible, they are inherently suggestive police procedures.  In determining the reliability and accuracy of
                                                        (continued...)

3

that this instruction "appropriately points out additional factors that a judge should consider including in a jury instruction regarding the reliability of show-up identifications," but had yet not been required to be considered in evaluating "reliability for admissibility purposes." Id. at 244-45, 450 P.3d at 774-75. After considering admissibility requirements in other states, the supreme court prospectively held that additional relevant factors that a jury must consider in a show-up identification must also be considered by a trial court in addressing the reliability and, therefore, admissibility of an impermissibly suggestive show-up identification. Id. at 247, 450 P.3d at 777.

The supreme court further held that, prospectively, trial judges *must* also consider the impact of suggestive procedures as a part of the reliability evaluation used to

---

[5](...continued)
an identification made at a police show-up, you must consider the totality of the circumstances involved in the show-up, which may include the following:
    **[Whether the identification was the result of a suggestive procedure, including actions taken or words spoken by police or anyone else to the witness before, during, or after the identification process;]**
    [Whether the police either indicated to the witness that a suspect was present in the procedure or failed to warn the witness that the perpetrator may or may not be in the procedure;]
    [**Whether the defendant** was required to wear distinctive clothing that the perpetrator allegedly wore, or **was handcuffed or otherwise appeared to be in police custody;**]
    [**Whether the witness was exposed to opinions, descriptions, or identifications made by other witnesses, or to photographs, news media, or to any other information that may have influenced the independence of the identification;**]
    [Whether other participants in the show-up were similar in appearance to the defendant;]
    [**Whether the witness's identification was made spontaneously** and remained consistent thereafter;]
    [and **any other circumstance relating to the witness's ability to make an identification.**]

(Emphasis added.)

determine admissibility.  Id. at 248, 450 P.3d at 778.

Finally, the supreme court noted that "factors affecting reliability are not set in stone [and] [r]eliability is a totality of the circumstances determination that can encompass more than the factors that are included in our standard instructions or discussed in this opinion."  Id. at 249, 450 P.3d at 779 (citation omitted).

Here, the Circuit Court found and it is undisputed on appeal that CW's identification of Jercy was a show-up identification and it was impermissibly suggestive.  The disputed issue is whether the Circuit Court erred in failing to consider the relevant HAWJIC 3.19A factors, the impact of the suggestiveness of the procedures used in the identification, and other relevant factors under the totality of the circumstances of the identification in its determination that the identification was reliable, notwithstanding that it was impermissibly suggestive.

The Order Denying Motion to Suppress shows the Circuit Court considered the factors in HAWJIC 3.19, but not the factors in HAWJIC 3.19A.  Under the totality of the circumstances here, we conclude that the Circuit Court erred in failing to consider relevant HAWJIC 3.19A factors, the impact of the suggestiveness of the procedures used in the identification, and other relevant factors.  The entire show-up identification was extraordinarily suggestive.  CW was strapped to a gurney, wearing a neck brace, and attached to other medical equipment in the back of an ambulance on the way to Pali Momi Medical Center.  The ambulance was diverted to a parking lot near the USS Arizona Memorial and

stopped, for the sole purpose of identifying Jercy as the perpetrator of the assault. With his hands cuffed behind his back, his arm held by a uniformed police officer wearing gloves, Jercy was walked past an open side door of the stopped ambulance and held (still handcuffed) by the uniformed officer several feet away from the back of the ambulance, with other police officers moving around in the area. The back ambulance doors were closed, but had two windows. At least one person (possibly more) – presumably one or more police officers – can be heard on the audio of a police bodycam recording (that was facing in through the side door of the ambulance) saying, *inter alia*: Is that the guy? Look out the window. Is this the guy? Is that the guy? Is that the same person?

On cross-examination, CW was asked: "Okay. The officers at your house, they told you they had the guy who attacked you, right?" CW answered, "Yes, they told me they found him, but I would identify him before I go to the hospital." One of the officers testified that he recalled telling CW that there was a suspect and that she needed to go identify him prior to any arrest.

Relevant factors set forth in HAWJIC 3.19A include whether the identification was the result of suggestive procedure including actions taken or words spoken by police before, during, or after the identification process; whether the defendant was handcuffed or otherwise appeared to be in police custody; whether the witness was exposed to opinions, descriptions, or identifications made by other witnesses; other information that may have influenced the independence of the identification;

6

whether the identification was made spontaneously; and any other circumstances relating to the witness's ability to make an identification. The Circuit Court did not consider any of these factors in its findings and conclusions. The Circuit Court clearly erred in finding and concluding that CW identified Jercy during the field show-up without any prompting. The entire procedure was extremely suggestive, beginning with her testimony that "they told me that they found him" – with "they" meaning the police, to the dramatic diversion of an ambulance headed to the emergency room of a hospital, to the stressful identification from a gurney in the back of an ambulance prompted with repeated uniformed police queries of is that the guy, including the extreme suggestiveness that he was in fact the guy because he was in handcuffs, and physically restrained by a police officer, with multiple officers in the immediate vicinity. The Circuit Court clearly erred in its findings and conclusions when it found and concluded that the identification was made "without any prompting." These are precisely the kind of circumstances that warrant trial court examination of the impact of suggestive procedures as a part of the reliability evaluation. See Kaneaiakala, 145 Hawaiʻi at 242, 450 P.3d at 772 (discussing, *inter alia*, that false identifications are more common than previously understood and the leading contributing factor in wrongful convictions).

Upon review of all of the evidence adduced concerning CW's identification of Jercy, including the evidence relied on by the Circuit Court, we conclude based on the totality of the circumstances, the Circuit Court clearly erred in failing to

7

evaluate HAWJIC 3.19A factors and the impact of the suggestive procedures in determining that CW's identification was reliable and therefore erred in concluding that CW's identification of Jercy was "sufficiently reliable" for the purposes of determining admissibility.

Accordingly, we vacate the Circuit Court's July 28, 2022 Order Denying Motion to Suppress and the November 21, 2023 Amended Judgment.  See, e.g., State v. Kong, 77 Hawaiʻi 264, 269, 883 P.2d 686, 691 (App. 1994).  This case is remanded to the Circuit Court for further proceedings consistent with this Summary Disposition Order.

DATED:  Honolulu, Hawaiʻi, January 30, 2026.

On the briefs:                         /s/ Katherine G. Leonard
                                       Presiding Judge
Benjamin E. Lowenthal,
Deputy Public Defender,                /s/ Keith K. Hiraoka
for Defendant-Appellant.               Associate Judge

Robert T. Nakatsuji,                   /s/ Clyde J. Wadsworth
Deputy Prosecuting Attorney,           Associate Judge
City & County of Honolulu,
for Plaintiff-Appellee.